COMMONWEALTH vs. KENNETH GALLANT
(and seven companion cases[1]).

Suffolk. May 7, 1980. — September 4, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law*, Admissions and confessions. *Evidence*, Admissions
and confessions.

A defendant's right to remain silent was violated where, immediately
after being given his Miranda rights and saying that he did not wish to
make a statement, the defendant was shown a copy of his brother's
statement implicating him in certain crimes and was asked if the state-
ment was true. [467-468]

The fact that a defendant made a statement to police only after being
shown a codefendant's statement which had been obtained in violation
of the codefendant's constitutional rights did not, in the circumstances,
require suppression of the defendant's statement as a prophylactic
measure. [468-471]

INDICTMENTS found and returned in the Superior Court
Department on January 12, 1979.

Motions to suppress evidence were allowed by *Garrity*, J.

The cases were reported by *Wilkins*, J., following his al-
lowance of the Commonwealth's application for an inter-
locutory appeal in the Supreme Judicial Court for the coun-
ty of Suffolk.

*Dyanne Klein Polatin*, Assistant District Attorney, for the
Commonwealth.

*Lawrence J. McGuire* for Neil E. Searles.

*John J. Jennings* for Kenneth Gallant.

WILKINS, J. A single justice of this court granted the
Commonwealth's application for leave to appeal interlocu-
tory orders suppressing certain evidence. See Mass. R.
Crim. P. 15 (b) (2), 378 Mass. 884 (1979). He then reported

---

[1] Four against Kenneth Gallant and three against Neil E. Searles.

the case to the full bench. We affirm the order as to the defendant Gallant and reverse the order as to the defendant Searles.

On January 12, 1979, an Essex County grand jury indicted the defendant Gallant for robbery, assault with intent to murder, mayhem, assault and battery by means of a dangerous weapon, and assault and battery. On the same day, the grand jury indicted Searles for robbery. These indictments related to incidents that occurred at a variety store in Amesbury. Each defendant filed a motion to suppress inculpatory statements allegedly made by him to police officers.

The judge who heard the motions made findings of fact. On January 4, 1979, two Amesbury police officers arrested Michael Gallant, brother of the defendant Gallant, at his home on a charge unrelated to the incidents at the Amesbury variety store. Michael was advised of his Miranda rights and questioned about the matter for which he was arrested. He admitted his involvement in that crime. He was then questioned about the incidents at the variety store and signed a statement implicating himself and each of the defendants in the variety store crimes. No question is presented here concerning the propriety of the procedures by which the police obtained Michael Gallant's statement. The judge denied a motion to suppress Michael's statement to the police.

On January 5, 1979, the defendant Gallant was arrested in connection with the variety store incidents. He was given Miranda warnings and was taken to the Amesbury police station. There he was advised of his rights again. He said that he knew his rights and that he did not wish to give a statement. A minute or so after Gallant indicated that he did not wish to make a statement, the chief of police handed Gallant his brother's statement implicating Gallant in the variety store crimes. Gallant read the statement. The chief advised him again that he did not have to say anything if he did not want to and then asked him if his brother's statement was true. Gallant said it was and made an oral state-

ment of his version of what happened. He acknowledged the accuracy of a written statement prepared by a police officer on the basis of Gallant's account, but he declined to sign it until his attorney had reviewed it.

The defendant Searles, who knew the police wanted to question him concerning the variety store incidents, appeared with his mother in the Amesbury District Court on January 22, 1979, on an unrelated matter. Searles was represented by counsel in the unrelated matter. The chief of police asked Searles and his mother to talk with him in his office. The attorney on the unrelated matter was not present. Neither Searles nor his mother asked for counsel to be present. The chief advised Searles of his constitutional rights. Although the judge found that Searles understood his rights, he did not expressly find that Searles waived those rights. The chief showed Searles the typed statement that Gallant had acknowledged as being accurate but had not signed. Searles then made a statement indicating his involvement in the variety store robbery.

The judge concluded that Gallant's right to cut off questioning was not scrupulously honored and allowed the motion to suppress his statements to the police. The judge also determined that Searles's "admissions . . . were obtained from him directly as a consequence of his having been shown admissions illegally obtained" from Gallant, and, acknowledging that he had found no authority directly in point, concluded that Searles's statement should be suppressed as well because "it is my opinion that a prophylactic rule should be applied here."

1. We agree with the judge's ruling suppressing Gallant's statements. This result is required by what we recently said in *Commonwealth* v. *Brant*, 380 Mass. 876, 882-883 (1980), where the significant facts are not materially different from those involved here. The *Brant* case concerned a defendant who asked to have an attorney present and fourteen minutes later, after learning of an alleged accomplice's confession, said he did not want an attorney present. The present case involves an assertion of a right to remain silent which was

immediately withdrawn, after the reading of an alleged accomplice's inculpatory statement. The difference is of no consequence under *Miranda* v. *Arizona*, 384 U.S. 436, 474 (1966). See *Commonwealth* v. *Watkins*, 375 Mass. 472, 484 (1978).

The issue is whether Gallant's right to terminate questioning was scrupulously honored. *Commonwealth* v. *Brant, supra* at 882. Here, the police chief immediately showed Gallant his brother's inculpatory statement after Gallant said he did not want to talk. There was an insufficient passage of time between the events to constitute a scrupulous observance of the defendant's right to cut off questioning. *Id* at 883. We do not say that a disclosure at some considerably later time of his brother's inculpatory statement, accompanied by fresh warnings as to his rights, would have made a statement by Gallant inadmissible. *Id.* at 886. However, the one minute interval between Gallant's assertion of his right to remain silent and the revelation of his brother's statement, for the obvious purpose of eliciting a response, was an infringement of Gallant's right to remain silent.

2. The issue as to the suppression of Searles's statement to the police is more troublesome. The judge concluded that, because Gallant's statement was obtained in violation of his constitutional rights and was shown to Searles before he made his inculpatory statement, Searles's statement should be suppressed as well.[2] The police were not led to Searles solely by Kenneth Gallant's statement. Michael Gallant's lawfully obtained statement implicated and identified Searles as well. We are bound by the judge's finding, however, that Searles was shown only Kenneth's statement before Searles made his inculpatory statement. See *Commonwealth* v. *Mahnke*, 368 Mass. 662, 689 (1975), cert. denied, 425 U.S. 959 (1976).

---

[2] He did not rule explicitly on whether Searles had knowingly and intelligently waived his right to counsel or whether the postindictment questioning of Searles in the absence of counsel violated his right to counsel.

Searles claims that Kenneth's statement let the "cat-out-of-the-bag" and argues, by analogy to principles considered in *Commonwealth* v. *Watkins,* 375 Mass. 472, 480-482 (1978); *Commonwealth* v. *Haas,* 373 Mass. 545, 554-555 (1977); and *Commonwealth* v. *Mahnke, supra* at 686-688, that Searles's subsequent statement was "not voluntary because the defendant's will not to incriminate himself [had] been overborne by the prior revelation." Searles asserts that it should make no difference that someone else let the cat out of the bag following the violation of that other person's constitutional rights.[3] We do not read the judge's findings and rulings as resting on the assumption that Searles talked because he believed the "cat was out of the bag." The judge's allowance of the motion to suppress is based solely on the conclusion that, because Searles made his statement after being shown Kenneth's unconstitutionally obtained statement, "a prophylactic rule should be applied." There is no authority for this proposition. Indeed, authorities suggest a different result.

In *United States* v. *Ceccolini,* 435 U.S. 268 (1978), the Supreme Court held admissible testimony of a witness whose identity was discovered as the result of an unconstitutional search. The Court concluded that the testimony should not have been excluded as "fruit of the poisonous tree" even though the government had failed to show that the "testimony definitely would have been obtained without the illegal search." *Id.* at 273. The admissibility of such evidence depends on "whether 'the connection between the lawless conduct of the police and the discovery of the challenged evidence has "become so attenuated as to dissipate the taint."'" *Id.* at 273-274, quoting from *Wong Sun* v. *United States,* 371 U.S. 471, 487, 491 (1963). The Court

---

[3] Searles's motion to suppress sought a suppression of all his statements to officers of the Amesbury police because the statements were taken in violation of Searles's constitutional rights. The judge and the parties have treated Searles's motion to suppress as based also on a claim that Searles's statement should be suppressed because of the violation of Gallant's constitutional rights.

also drew a distinction between inanimate objects and live-witness testimony in its "fruit of the poisonous tree" analysis, and indicated that dissipation of the taint was more likely to occur in the case of live-witness testimony. *United States* v. *Ceccolini, supra* at 276-277. The *Ceccolini* case involved testimony of a witness, but the Court indicated that its analysis would apply to testimony of a putative defendant as well. *Id.* at 276, 277.

The factors that must be considered in determining whether the taint of police misconduct has dissipated include the witness's free will in choosing to testify; the time, place and manner of the initial questioning of the witness; the time lapse between the time of the illegal conduct and the initial contact with the witness; the nature and extent of police misconduct; and the possibility of obtaining the same testimony independently of the illegal conduct. *Commonwealth* v. *Caso,* 377 Mass. 236, 241 (1979). Considering all of these factors, we conclude that the principles underlying the "fruit of the poisonous tree" doctrine do not require the suppression of Searles's statement. His constitutional rights were not violated.[4] Searles went to the police station accompanied by his mother. They knew the police wanted to question him about the crimes at the variety store. He had had access to an attorney, although in connection with another matter. He was advised of his right to remain silent and to have an attorney. The police first learned of Searles's involvement in the crime from Michael's statement, which had been lawfully obtained. The police acted in good faith in revealing Kenneth's statement to Searles. If that statement had been obtained lawfully, Searles's statement would be admissible. "Application of

---

[4] In search and seizure cases under the Fourth Amendment, application of the exclusionary rule is limited to evidence obtained in violation of the constitutional rights of the person who is challenging the admissibility of such evidence. See, e.g., *United States* v. *Salvucci,* 448 U.S. 83 (1980); *Rakas* v. *Illinois,* 439 U.S. 128, 134 (1978). The reasons for such a limitation in Fourth Amendment cases are much the same as those applicable in cases involving rights under the Fifth Amendment. See *Rakas* v. *Illinois, supra* at 134 n.3; *United States* v. *Ceccolini,* 435 U.S. 268, 277-278 (1978).

the exclusionary rule in this situation could not have the slightest deterrent effect on the behavior of [such] an officer." *United States* v. *Ceccolini, supra* at 280. The conclusion we reach is consistent with the Supreme Court's decision in *Michigan* v. *Tucker,* 417 U.S. 433, 450-451 (1974), where the Court held admissible the testimony of a witness whose identity was disclosed by the defendant's statement given after inadequate Miranda warnings.

We think that the "prophylactic rule" by which an unconstitutionally obtained statement is excluded from evidence in order to encourage police officers to preserve people's constitutional rights has generally served its purpose when the statements of the person whose constitutional rights were violated are suppressed. *United States* v. *Ceccolini, supra* at 275-276. The unlawful conduct in obtaining Kenneth's statement in no way tainted the procedures followed in questioning Searles. If the police had fabricated Kenneth's statement, or had obtained it by coercion, or possibly if the police had been led to Searles only because of Kenneth's statements, a broader application of the prophylactic rule might be warranted. See *Commonwealth* v. *Meehan,* 377 Mass. 552, 563-564 (1979), cert. granted, 444 U.S. 824 (1980); *Commonwealth* v. *Jackson,* 377 Mass. 319, 327 (1979); *Commonwealth* v. *Caso,* 377 Mass. 236, 239 (1979). These circumstances are not present here.

We affirm the order suppressing statements made by Kenneth Gallant and reverse the order suppressing Searles's statements. Searles's motion to suppress must be considered further on those contentions not dealt with by the judge — the contention that Searles talked because he believed the "cat was out of the bag" and the further contentions mentioned in note 2, *supra.*

*So ordered.*