COMMONWEALTH *vs*. ANTHONY COPLIN.

No. 91-P-659.

Suffolk. January 11, 1993. - May 13, 1993.

Present: PERRETTA, KASS, & LAURENCE, JJ.

*Constitutional Law*, Admissions and confessions, Waiver of constitutional rights. *Evidence*, Admissions and confessions. *Waiver*. *Controlled Substances*.

In circumstances in which police officers announced to a defendant, at the time of his arrest, the Miranda warnings, in their entirety, and later, when interrogating him at a police station, again informed him of his Miranda rights, in speech and in writing, but each time omitted the warning that anything the defendant might say could be used against him in a court of law, this court was of opinion that, absent any manifestation of earlier understanding by the defendant, the first warning did not carry over to the later ones, i.e., the chain of continuity was broken, and the statement made in response to the later foreshortened Miranda warnings was not the product of a voluntary and intelligent waiver of the right to remain silent [481-483]; furthermore, in view of the prosecution's heavy emphasis in closing argument on the defendant's inculpatory statement at the police station and its implications as an admission of guilt, the defendant's statements should have been suppressed. [483-484]

In a prosecution for trafficking in a quantity of cocaine contained in three bags in which the defendant challenged the method used to calculate the weight of cocaine in one of the bags, which in turn contained 174 aluminum foil packets of small amounts of the drug, a chemist's weighing the content of twenty packets chosen at random, calculating the average weight per packet, and multiplying that average weight by 174 was found to be an acceptable method of determining the weight of the bag for purposes of proving that the statutory weight was met or exceeded. [484-485]

INDICTMENT found and returned in the Superior Court Department on May 23, 1990.

The case was tried before *Patti B. Saris*, J.

*Bernard Grossberg* for the defendant.

*Kenneth H. Anderson*, Assistant District Attorney, for the Commonwealth.

KASS, J. When police first arrested the defendant Coplin in a drug "bust," an officer announced to him, in their entirety, the Miranda warnings. Later, when officers interrogated Coplin at a police station, they again informed Coplin of his Miranda rights, in speech and in writing, but each time omitting the warning that anything the suspect might say could be used against him in a court of law. In the particular circumstances of the case, we are of opinion that the first warning did not carry over to the later ones, i.e., the chain of continuity was broken. Contrast *Commonwealth v. Look*, 379 Mass. 893, 906 (1980). Coplin's inculpatory statement at the station should have been suppressed; it is necessary to reverse the judgment.

Coplin was convicted in Superior Court by a jury of trafficking in cocaine in an amount equal to or greater than fourteen grams and less than twenty-eight grams. (G. L. c. 94C, § 32E[*b*][1]). His appeal also claims a deficiency in the government's proof of the net weight of the drugs seized at the time of his arrest, a point we think is unpersuasive.

Armed with a no-knock search warrant, six members of the Boston police drug control unit descended upon apartment 306 at 25 South Point Drive in the Harbor Point housing development in the Dorchester section of Boston. They were equipped with a door key (supplied by the management) and — just in case — a battering ram, but an occupant providentially opened the door from the inside as the police approached, enabling the police officers to race in. Once inside, the officers fanned out. Coplin was apprehended in a bathroom where a bag containing cocaine and money was found floating in the toilet. Together with the defendant, two other men were arrested at the scene and, as they lay handcuffed on the floor of a bedroom, one of the officers, Sergeant Detective Maloney, announced to them all the Miranda warnings. Asked by the prosecutor at a voir dire exam-

ination[1] whether the defendant appeared to understand "what you were saying to him," Detective Maloney replied, "I got that impression, yes, sir."

Some thirty to forty-five minutes later, the defendant was brought to the District C police station and booked. At the booking desk, the booking officer repeated the Miranda warnings to Coplin, but, according to the officer's testimony, he omitted the warning that anything Coplin said might be used against him in court. One might factor into the equation that Officer Spillane, who testified about what was said at booking, may not have remembered the details of what was said or was conscious that he had made an important omission. As the court observed in *Commonwealth* v. *Lewis*, 374 Mass. 203, 205 (1978), "[n]o useful purpose is served by testing on the witness stand the officer's ability to recite accurately from memory the Miranda warnings he read," and the same reasoning applied to a test of memory of what was said without reading from a card. What appeared on the Boston police department arrest booking sheet, however, was not a matter of memory. Block 48 of that form said: "I was informed of my right to remain silent, to use a phone, to call a lawyer, or to have one provided for me." Underneath that printed phrase, Coplin was asked to sign, and he did so. Missing from the printed material are the words: "and that anything I say may be used against me in a court of law." Thereafter, Officer Spillane took Coplin to a detective's room for interrogation. Spillane again repeated to Coplin the Miranda rights, again omitting the warning about possible use against him in court of anything the defendant said. During

---

[1] The inculpatory statement of the defendant was brought to the attention of defense counsel just before trial. Consequently, the defense was not able to make a pretrial motion to suppress. Instead, the judge permitted the defense to make a motion in limine during trial, before evidence of the inculpatory statement was offered by the government. The circumstances and content of the Miranda warnings were examined in voir dire proceedings. Cf. *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 511 (1989).

the ensuing interrogation, Coplin spoke the words later used against him at trial: "I knew that you were going to do me."[2]

1. *Flaws in the giving of Miranda warnings.* As the case has been presented, there is no disagreement that the warning about the possible consequences of forgoing the privilege to remain silent was omitted from the second round of Miranda warnings at the station house. The lapse is not trivial. In the original decision from which the Miranda warnings derive their name, *Miranda* v. *Arizona*, 384 U.S. 436, 469 (1966), the Court took some pain to explicate that a warning about the consequence of speech was an unconditional prerequisite to interrogation:

> "The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system — that he is not in the presence of persons acting solely in his interest."

See also *Commonwealth* v. *Dustin*, 373 Mass. 612, 615 (1977), cert. denied, 435 U.S. 943 (1978) (police officer interrogating the defendant in that case left the impression that the defendant's statement could *not* be used against him); *Commonwealth* v. *Adams*, 389 Mass. 265, 269 (1983).

The question, as we have suggested, reduces to whether the complete set of warnings given at the time of arrest carried over to the events relatively soon after at the station house; whether, as the trial judge astutely put it, the later set of warnings, including what was printed on the booking

---

[2]More precisely, Officer Spillane testified: "He [the defendant] stated to me that he knew that I was going to do him."

sheet, might be regarded as shorthand for the complete set of warnings. Into consideration of that question we must weave the principle that the government always bears a heavy burden in establishing that there has been a voluntary, knowing, and intelligent waiver of the right to remain silent. *Commonwealth v. Mandeville*, 386 Mass. 393, 403-404 (1982). *Commonwealth v. Boncore*, 412 Mass. 1013, 1015 (1992). *Commonwealth v. Griffin*, 19 Mass. App. Ct. 174, 183 (1985). Smith, Criminal Practice & Procedure § 369 (2d ed. 1983).

In testing the voluntariness of a waiver of Miranda rights, the examining court looks to the particular circumstances of the case, e.g., the psychological pressures, if any, on the accused and his background, experience, and conduct. *North Carolina v. Butler*, 441 U.S. 369, 374-375 (1979). *Commonwealth v. Mandile*, 397 Mass. 410, 412-413 (1986). Smith, Criminal Practice & Procedure at § 368. Of Coplin's background and experience we know nothing. When the complete warnings were given, it will be recalled, Coplin and two other men were, on command of armed police, lying on the floor and were handcuffed. One may doubt the ability of a person in such a sudden and violent situation to be thoughtful about the elements of the warnings. There was no evidence that Coplin manifested understanding of the warnings when thus brought to ground other than Detective Maloney's "impression." There is lacking proof beyond a reasonable doubt, see *Commonwealth v. Allen*, 395 Mass. 448, 456-457 (1985), of understanding and voluntary waiver at the point of arrest, nor did the trial judge make any finding that there was any such understanding and waiver.

At the police station, the defendant was invited to speak and cooperate. Now is when the Miranda warnings became much more than a ritual, and at that important juncture they became abbreviated. Assuming, as we ought, that accused persons hear, understand, and reason about the Miranda warnings, it becomes significant that when the defendant was asked to confirm by written signature that he had received his Miranda warnings, a critical element was missing and

was not made up by anything said. In the circumstances we have described, we do not think the abbreviated second round of warnings worked as a shorthand to incorporate the first round. The court in *Commonwealth* v. *Look,* 379 Mass. at 906, emphasized that there had been no evidence of a break in the chain of events between the time full Miranda warnings had been imparted to the defendant in a hospital setting and later at a place of interrogation in a police station, when the right to remain silent was not restated. In the *Look* case the court was able to determine that at the interrogation, the accused indicated to police officers that he still understood his rights as earlier stated to him, and that he wished to waive them. *Ibid.* Here there was no manifestation of earlier understanding by the defendant, and the only manifestation we have is the acknowledgment of the incomplete warnings on the booking sheet. There is, therefore, no chain of continuity, and the statement made in response to the foreshortened Miranda warning was not a voluntary and intelligent waiver of the right to remain silent.

It is instructive to compare the instant case to *Commonwealth* v. *Alicea,* 376 Mass. 506, 513-514 (1978), in which the defendant acknowledged receiving Miranda warnings before his situation became custodial. Those warnings carried through when a short time later suspicion became centered on the defendant. Also different is *Commonwealth* v. *Marquetty,* 28 Mass. App. Ct. 690, 694-696 (1990), in which we said that when Miranda warnings are fully given before questioning a witness, they need not be repeated before inquiry moves on to a different offense.

2. *Question of harmless nature of the defendant's statement.* Reversal is not automatic because of the imperfection in the Miranda warnings. It is necessary to consider whether the Miranda violation was harmless beyond a reasonable doubt. See *Commonwealth* v. *Perez,* 411 Mass. 249, 259-260 n. 7 (1991). The defendant, it will be recalled, was reported as having said when interrogated by police: "I knew that you were going to do me." In the abstract, that is not a devastatingly incriminating statement by the defendant when

weighed against the highly probative evidence of his having been apprehended in his apartment (there was persuasive evidence that it was his apartment) trying to flush contraband down the toilet. See, e.g., *Commonwealth* v. *Brown, ante* 222, 225 (1993). The prosecution, however, made much of Coplin's statement. In closing argument, the prosecutor referred to the statement, quoted it, or paraphrased it eight times and dilated on its significance:

> ". . . The defendant didn't say, 'I knew you were going to do Mr. Smith.' He said, 'I knew you were going to do me.'

> "And I suggest to you he said that because he was done in his bedroom, in his apartment.

> "You might ask yourselves, why did the defendant know that the police were going to do him? I suggest to you the defendant knew that because he was trafficking in cocaine and distributing and possessing marihuana in that specific apartment and bedroom areas. That's why he knew."

In view of the government's heavy emphasis on the defendant's statement and its implications as an admission of guilt, it becomes an untenable exercise in reading the minds of the jury now to say that the jury would infallibly have come to the same verdict had they never heard the statement rubbed into their ears so effectively by the prosecutor in closing. See *Chapman* v. *California*, 386 U.S. 18, 26 (1967); *Commonwealth* v. *Hosey*, 368 Mass. 571, 579 (1975).

3. *Method of calculating net weight of the drug.* We comment on an evidentiary point raised by the defendant because it is likely to arise again in the event of a retrial. An essential element of the offense charged was that the cocaine in which the defendant was said to be trafficking exceeded fourteen grams. G. L. c. 94C, § 32E(*b*).(1). The police had found three bags of cocaine weighing, according to certificates of analysis received conformably with G. L. c. 111, § 13, an aggregate 19.62 grams.

The defendant challenges the methods used to calculate the weight of cocaine in one of the bags, which in turn contained 174 aluminum foil packets of small amounts of the drug. What the chemist did was weigh the content of twenty packets chosen at random, calculate the average weight per packet, and multiply that average weight by 174.[3] It is inconsistent, the defense argues, with proving that the statutory weight was met or exceeded beyond a reasonable doubt to rely on an imputation of average weight to the other 154 packets.

Substantially similar random sampling was held acceptable in *Commonwealth* v. *Johnson*, 410 Mass. 199, 200-201 (1991), and *Commonwealth* v. *Shea*, 28 Mass. App. Ct. 28, 33 (1989). See also *United States* v. *Hilton*, 894 F.2d 485 (1st Cir. 1990), accepting extrapolation of one bale of marihuana as evidence of twenty-two bales.

*Judgment reversed.*
*Verdict set aside.*

---

[3]That multiplication produced an aggregate weight for the foil packets of 12.74 grams. The other two bags contained 4.43 grams and 2.45 grams respectively, producing the total of 19.62 grams for the three bags.