COMMONWEALTH *vs.* JACK DOE.

No. 93-P-901.

Essex. May 9, 1994. - July 14, 1994.

Present: KASS, FINE, & GREENBERG, JJ.

*Constitutional Law*, Admissions and confessions, Assistance of counsel, Waiver of constitutional rights. *Evidence*, Admissions and confessions. *Practice, Criminal*, Voluntariness of statement, Assistance of counsel. *Waiver*.

At a criminal trial the judge correctly denied the defendant's motion to suppress a certain statement he had made to police, where the defendant was not in custody at the time the statement was made and where there was no evidence that the police had made a deal with the defendant or that the defendant was intentionally misled about the purpose of the questioning. [32-33]

At a criminal trial the judge correctly denied the defendant's motion to suppress his voluntary statement, made to police officers after he had been arrested on the basis of probable cause and after he had been given his Miranda warnings. [33-34]

An incriminating statement of a defendant, made to police more than two days after he last was given Miranda warnings and after his having expressed a wish for more time before deciding whether to cooperate, should have been suppressed; however, its admission in evidence was harmless in light of the defendant's numerous other inculpatory statements properly admitted and other substantial evidence of his guilt. [34-36] KASS, J., concurring.

INDICTMENT found and returned in the Superior Court Department on January 22, 1991.

A pretrial motion to suppress evidence was heard by *John L. Murphy, Jr.*, J., and the case was tried before him.

*James J. Cipoletta* for the defendant.

*Elin H. Graydon*, Assistant District Attorney, for the Commonwealth.

FINE, J. The defendant was convicted of two counts of armed robbery while masked, G. L. c. 265, § 17, arising out

of a holdup of a bank in Beverly. On appeal, he contends that his motion to suppress three statements used against him at trial should have been allowed. We discuss separately the circumstances in which each of the statements was made and the propriety of its admission. We conclude that admission of one of the statements was error but that it was harmless beyond a reasonable doubt. We therefore affirm the convictions.

1. *The first statement.* The defendant had provided confidential information to Salem police Sergeant Richard Urbanowicz which had helped solve earlier bank robberies. In the weeks following the Beverly bank robbery, the defendant, without indicating his own involvement, provided confidential information to Sergeant Urbanowicz concerning that robbery. Urbanowicz passed the information along to Beverly Detective John Bianchi. Because the Beverly police had information of their own linking the defendant's car to the robbery, he became a suspect. At Detective Bianchi's request, Sergeant Urbanowicz revealed the defendant's identity to the Beverly officers and agreed to try to set up a meeting with the defendant. Although the defendant later said he had become aware that he was a suspect, he agreed to the meeting.

Detective Bianchi and Captain John Cassola, also of the Beverly police, arranged to meet the defendant in his home on a Friday morning about a month after the robbery for the express purpose of questioning him about the robbery. When the police arrived, the defendant was home with his children. The atmosphere was relaxed and the defendant spoke freely. Although he did not reveal that he was a participant, he described how the robbery was carried out, and he named several individuals who had been involved in it. The defendant agreed to allow the officers to take his photograph to include in an array to be shown to bank employees. At no point during the interview did the officers give the defendant the Miranda warnings. When told that the photographs would also be shown to two witnesses who were present when the getaway car was stolen, the defendant made the first statement

in issue: "I never said I wasn't there when the car was stolen."

The defendant moved to have the statement suppressed on the ground that, before making it, he had not been given the Miranda warnings. The judge ruled that the warnings were not required because the defendant was not in custody. See *Commonwealth v. Bryant*, 390 Mass. 729, 736 (1984). There is ample evidence to support the conclusion that the defendant was not in custody before making the statement, and on appeal there is no contention that the environment in which it was made was coercive. Instead, the defendant focuses on his previous relationship with Sergeant Urbanowicz as a confidential informant and contends that, because of that relationship and the absence of any warnings, the Commonwealth failed to satisfy the requirement that it prove beyond a reasonable doubt, see *Commonwealth v. Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137, (1982), that the statement was voluntary.

The defendant points to the evidence that the meeting was arranged by the officer with whom he had been cooperating, that nothing was said to indicate that the discussion was not confidential, and that no mention was made that he was a target of the investigation. Failure of the detectives to warn him that he might be charged with the crime they were investigating and that any statements he might make could be used to convict him of that crime, he maintains, was, in the circumstances, so deceptive as to make the statement involuntary. See *Commonwealth v. Dustin*, 373 Mass. 612, 615-616 (1977), cert. denied, 435 U.S. 943 (1978); *Commonwealth v. Meehan*, 377 Mass. 552, 563 (1979), cert. dismissed, 445 U.S. 39 (1980); *Commonwealth v. Nero*, 14 Mass. App. Ct. 714, 717 (1982); *Commonwealth v. Chandler*, 29 Mass. App. Ct. 571, 576-577 (1990); *United States v. Rogers*, 906 F.2d 189, 192 (5th Cir. 1990). But see *Commonwealth v. Wills*, 398 Mass. 768, 777 (1986) (suspect need not be advised of his status as such before his statement may be considered voluntary).

We are aware of no decision, and the defendant does not point us to any, holding that the relationship between the po-

lice and a confidential informant guarantees that incrimina-
tory statements made in the course of the relationship may
not be used to convict the informant of the crime being inves-
tigated. There was no evidence that the police made a deal
with the defendant, or that he was intentionally misled. See
*Illinois* v. *Perkins*, 496 U.S. 292, 297 (1990). There may
well be a situation so misleading to an informant that he
would reasonably believe that he has nothing to fear from
making an incriminatory statement about the crime; such a
statement might not meet the test of voluntariness. This,
however, is not such a situation. The officers stated their pur-
pose at the outset: to question the defendant about the Bev-
erly bank robbery. They were from a different police depart-
ment than Sergeant Urbanowicz, and the defendant had
never met with them previously. There is no indication that
the officers said or did anything to create the impression that
they would regard the information the defendant provided as
confidential and that they would not use the defendant's
statements to prosecute him for the crime. Contrast *United
States* v. *Rogers*, 906 F.2d at 191. It was not error, there-
fore, for the motion to suppress the statement to be denied.

2. *The second statement.* After they left the defendant's
home midday on Friday, the Beverly police officers showed
the defendant's photograph to two tellers who were in the
bank at the time of the robbery. They made positive identifi-
cations. Later the same day, Detective Bianchi called the de-
fendant to inform him that his photograph had been selected
and asked him to come to the Beverly police station. The de-
fendant arrived in the evening with his wife and a child. He
was given his Miranda warnings and placed under arrest. He
indicated to the officers that he had been aware all along that
he was a suspect. He expressed his fear of the other partici-
pants, at least one of whom was being held in jail, and he
discussed his need for protective custody, bail, and the possi-
bility of a disposition not involving incarceration. When the
defendant asked how he could have been identified if
masked, the detectives told him he had been seen going into
the bank. The defendant replied by shaking his head and

commenting as an acknowledgement, "Seen going into the bank."

The defendant contends that his arrest was unlawful and that the statement should have been suppressed as a product of the unlawful arrest. He bases his claim on the alleged constitutional violations committed in the course of the morning interview. We have decided, however, that there were no such violations. The officers had probable cause to arrest the defendant once his photograph, taken with his consent, had been identified by the tellers, and the Miranda warnings were given before he made the statement in issue. Denial of the suppression motion was not error.

3. *The third statement.* When asked at the Beverly police station on Friday evening after his arrest if he wanted to cooperate further, the defendant asked for the weekend to think about it. He was unable to raise the required bail and was kept in police lockup over the weekend. On Monday morning, Detective Bianchi approached the defendant and, without repeating the Miranda warnings, asked him if he had decided whether to cooperate. The defendant responded that "he wanted a little more time to think about it." Detective Bianchi proceeded immediately to discuss protective custody. Then he said, "[W]e would at least like to get the gun back." The defendant replied with the third statement in issue to the effect that they already had the gun, as it was the same gun they had taken from an individual arrested for another robbery.[1]

The defendant moved to suppress the statement on the ground that it was the product of interrogation conducted by the police after he had expressed his desire to remain silent and without the benefit of a new set of Miranda warnings. The judge found "beyond a reasonable doubt" that the statement was made "voluntarily and after the Miranda warning was given two days earlier." On appeal, the defendant contends that he had expressed his desire to cut off questioning

---

[1]The defendant had previously told Sergeant Urbanowicz and the two Beverly officers that the individual from whom they had taken the gun was involved in the Beverly bank robbery in issue.

and that his wish to remain silent had not been "scrupulously honored." See *Michigan* v. *Mosley*, 423 U.S. 96, 104 (1975).

In light of the fact that on Monday morning, after saying he wanted more time to consider whether to cooperate, the defendant discussed his predicament with the officers in a sophisticated manner and did not hesitate to answer the question about the gun,[2] had the Miranda warnings been repeated, suppression would not have been required. See *Commonwealth* v. *Gallant*, 381 Mass. 465, 466 (1980); *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 265-266 (1982); *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 278 (1983); *Commonwealth* v. *Pennellatore*, 392 Mass. 382, 387-388 (1984). We think it dispositive of the claim, however, that a new set of Miranda warnings was not given. Miranda warnings, once given, "are not to be accorded unlimited efficacy or perpetuity." *Commonwealth* v. *Cruz*, 373 Mass. 676, 687 (1977), quoting from *United States* v. *Hopkins*, 433 F.2d 1041, 1045 (5th Cir. 1970), cert. denied, 401 U.S. 1013 (1971). The original warnings, on Friday evening, were insufficient to carry over to the interrogation by Detective Bianchi on Monday morning, see *Commonwealth* v. *Coplin*, 34 Mass. App. Ct. 478, 483 (1993), and the period between the warning and the resumption of interrogation exceeded by far those time lapses which have been found insignificant for purposes of determining the validity of the defendant's knowing, voluntary, and intelligent waiver of his rights. See *Commonwealth* v. *Cruz*, 373 Mass. at 685-687 & n.6 (three hours); *Commonwealth* v. *Silva*, 388 Mass. 495, 502 (1983) (three hours); *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 174 (1981) (less than one and one-half hours). But see *Commonwealth* v. *Sousa*, 350 Mass. 591, 598 (1966) (eighteen hours). In the circumstances here, including both the lapse of a considerable period of time and the defendant's expression of his wish for more time before deciding whether to cooperate, the Miranda warnings should have been repeated before he was questioned further by the

---

[2] The Commonwealth does not contend that there was an issue of public safety relating to the gun. See *New York* v. *Quarles*, 467 U.S. 649 (1984).

police. Absent the warnings, there was no showing of a knowing, voluntary, and intelligent waiver, and the statement should have been suppressed. See *Commonwealth* v. *Murray*, 359 Mass. 541, 544-546 (1971) (lapse of two days between warning and interrogation not sufficient to establish waiver).

We conclude, however, that the error with regard to the third statement, that the officers had the gun because it was one used in another robbery, was harmless beyond a reasonable doubt. See *Commonwealth* v. *Marquetty*, 28 Mass. App. Ct. 690, 696 (1990). The statement was not an admission of the defendant's participation in the robbery, but it did tend to incriminate him as it indicated that he had detailed knowledge about the robbery. However, numerous other statements of his, properly admitted, revealed that he possessed very detailed knowledge of the robbery, including the identity of the participants, how the getaway vehicle was obtained, and where the red-dye soaked money was taken to be cleaned. Moreover, the other evidence of the defendant's guilt was substantial. Apart from the defendant's numerous inculpatory statements, properly admitted, two eyewitnesses identified the defendant's photograph and one identified him in court.[3]

*Judgment affirmed.*

KASS, J. (concurring). To be sure, "*Miranda* warnings, once given, are not to be accorded unlimited efficacy or perpetuity." *United States* v. *Hopkins*, 433 F.2d 1041, 1045 (5th Cir. 1970), cert. denied, 401 U.S. 1013 (1971). Whether, however, the lapse of time between initial warning and later statement is consequential, depends on answering a further question: "Did the defendant, with a full knowledge of his legal rights, knowingly and intentionally relinquish them?" *Commonwealth* v. *Cruz*, 373 Mass. 676, 687 (1977).

---

[3]A third witness identified as a passenger in the getaway car an individual who had been named by the defendant as a participant, thus confirming that the defendant knew the details of the robbery.

*Miller* v. *United States*, 396 F.2d 492, 496 (8th Cir. 1968), cert. denied, 393 U.S. 1031 (1969). *United States* v. *Standing Soldier*, 538 F.2d 196, 201 n.5 (8th Cir.), cert. denied, 429 U.S. 1025 (1976). The particular circumstances of the accused's situation, e.g., psychological pressures, and the accused's background, experience, and conduct are guides to assessing the voluntariness of a statement. *Commonwealth* v. *Coplin*, 34 Mass. App. Ct. 478, 482 (1993).

Here, the defendant is a double agent. He simultaneously participates in bank robberies and reports to the police on that particular specialty in criminal enterprise. He engages freely in conversations with the police, choosing what he wishes to talk about and not talk about. He appears serene in the conviction — mistakenly, as it turns out — that if he is circumspect about what he says, he can safely play a role in the criminal and prosecutorial worlds. In his dialogue with the police, the defendant displays knowledge of police practices, shuts off conversation so that he may reflect on his situation, and bargains for protective custody, bail, and a favorable disposition. Those actions manifest full knowledge by the defendant about his legal rights and a calculated relinquishing of the right to remain silent. When a person is selective in his utterances in this fashion, it is difficult to escape the conclusion that any statements made are spoken while conscious of the right to remain silent. *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 278 (1983). It is divorced from reality to suppose that the defendant, acting as he did, had forgotten over the weekend the Miranda warnings administered late on the previous Friday. It is equally implausible that the conduct of the defendant, while he was consciously engaged in maneuver with the police, would have been influenced by a repetition of the Miranda warnings. In the particular circumstances, repetition would have been a formulaic ceremony.

I, therefore, disassociate myself from so much of the court's opinion as suggests that in this case it was legally necessary in the interview on Monday to refresh the Miranda warnings earlier given to the defendant.