## Commonwealth vs. Jimmy Lee Crapps, Jr.

No. 11-P-1753.

Hampden. March 4, 2013. - October 24, 2013.

Present: Berry, Sikora, & Milkey, JJ.

*Controlled Substances. Evidence,* Constructive possession, Expert opinion, Scientific test. *Practice, Criminal,* Findings by judge.

At the trial of an indictment charging trafficking in twenty-eight to one hundred grams of "crack" cocaine, in violation of G. L. c. 94C, § 32E(*b*)(2), the evidence was sufficient to sustain the defendant's conviction, where the defendant's proximity, access, and collateral conduct permitted the inference of an intention to exercise control over, i.e., constructive possession of, the cocaine found in the center console of the automobile he was driving; and where the testimony of a drug laboratory chemist permitted a rational trier of fact to find the aggregate weight of the cocaine, based on the chemist's extrapolated measurement of multiple packets, to amount to twenty-eight grams or more. [444-449] Milkey, J., concurring.

Indictment found and returned in the Superior Court Department on August 11, 2009.

The case was heard by *Peter A. Velis,* J.

*Amanda Lovell* for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

Sikora, J. At the conclusion of a jury-waived trial, a Superior Court judge convicted the defendant of trafficking in twenty-eight to one hundred grams of "crack" cocaine, G. L. c. 94C, § 32E(*b*)(2).[1] On appeal, the defendant presents two challenges to the sufficiency of the evidence. He contends that the Com-

---

[1]The defendant was convicted also of possession of "crack" cocaine with intent to distribute, subsequent offense, and prosecuted as an habitual offender. When the trial judge allowed the defendant's motion for new trial on the conviction of possession with intent, the Commonwealth filed a nolle prosequi, and also dismissed the habitual offender charge.

monwealth failed to prove (1) that he constructively possessed the drugs found in the center console of the automobile which he was driving; and (2) that the weight of the crack cocaine exceeded twenty-eight grams because the Commonwealth's chemist improperly extrapolated the net aggregate weight of the crack cocaine from a sampling of the packets found in the console. For the following reasons, we affirm.

*Background.* The evidence permitted the judge to find the following facts. In July, 2009, Springfield police were conducting surveillance of the defendant. On one occasion, they observed him driving a white Lexus sport utility vehicle (SUV). The registration of the SUV identified the owner as Matrisa Collins, the defendant's girlfriend, with whom he shared an address. On July 23, 2009, the police observed the defendant driving the SUV with no passengers. He drove to a store parking lot, where a female entered the passenger's side of the SUV. The SUV traveled a very short distance and then stopped. The woman got out and walked away.

These observations prompted the police to stop and search the SUV and, later, the defendant.[2] The officers recovered (1) a white tube sock in the center console containing (a) a plastic bag of thirty-six individual packets of apparent crack cocaine; and (b) a plastic bag containing a larger chunk of apparent crack cocaine; (2) sixty-six dollars in cash; (3) on the front passenger's side seat, the defendant's personal papers; (4) from the driver's side door pocket, a cellular telephone; and (5) from the defendant's pants pocket, $585 in cash.

At trial, a chemist from the University of Massachusetts drug laboratory testified that the substances were crack cocaine. She testified also to the net weight of the drugs, and to the process of extrapolated measurement of that weight. She randomly had chosen four packets from the thirty-six, or approximately ten percent of the total, and entered their weights into a computer program. The program then computed an average weight of the four packets and a standard deviation to produce an aggregate net weight of the thirty-six packets of 14.29 grams. Because the

---

[2]On appeal the defendant does not challenge the validity of the stop or the search of the vehicle or his person.

larger chunk weighed 17.58 grams, the total net weight of the substances reached 31.87 grams.

*Analysis.* 1. *Constructive possession.* A challenge to sufficiency requires review of the evidence in the light most favorable to the Commonwealth. Under the settled standard, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979). To establish constructive possession, the Commonwealth must prove a defendant's (a) knowledge of the contraband; (b) ability to control it; and (c) intention to exercise control over it. *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 409 (1989). *Commonwealth* v. *Boria,* 440 Mass. 416, 418 (2003). *Commonwealth* v. *Gonzalez,* 452 Mass. 142, 146 (2008). Mere presence is insufficient proof. *Commonwealth* v. *Albano,* 373 Mass. 132, 134 (1977). *Commonwealth* v. *Romero,* 464 Mass. 648, 653, 654 (2013). Rather, "additional inculpatory evidence" beyond a defendant's presence in, and operation of, a vehicle is necessary. *Id.* at 654. Additional incriminating evidence can "tip the scale in favor of sufficiency." *Id.* at 653, quoting from *Commonwealth* v. *Albano, supra.* Here the evidence passes the tipping point.

The defendant was the driver and the sole occupant of the SUV. He lived with the registered owner of the vehicle; the previous day, she had permitted him to use the SUV. Exclusive and continuous operation of the SUV both supported the inference of the defendant's knowledge of its contents and reduced the number of possible alternate possessors. Contrast *Commonwealth* v. *Almeida,* 381 Mass. 420, 422-423 (1980) (no constructive possession of weapon in center console of vehicle which defendant had borrowed that evening); *Commonwealth* v. *Romero, supra* at 650, 656-657 (no constructive possession where defendant driver had multiple passengers in vehicle, and had no specific connection to weapon).

In addition, the police had observed suspected drug dealing behavior: the brief visit of the female passenger, the short drive to nowhere, and the passenger's quick exit. During the search, the police found the defendant's personal papers on the passenger's side seat adjacent to the console. These circumstances

strengthen the link between the defendant and the location of the drugs. See *Commonwealth* v. *Clark*, 446 Mass. 620, 624 (2006) (constructive possession where [a] cocaine found in center console; and [b] defendant had control of vehicle; even though [c] the Commonwealth did *not* establish ownership of vehicle); *Commonwealth* v. *Lee*, 2 Mass. App. Ct. 700, 704-705 (1974) (constructive possession supported by evidence of personal papers in apartment where police found heroin). Additional indicia of intent to control the drugs included the defendant's possession of $585 in cash as inferable sales revenue, and the cellular telephone in the driver's side door pocket as an inferable instrument of deals and delivery.[3]

In sum, the aggregate evidence exceeds the defendant's mere presence in, or operation of, the vehicle. It "tip[ped] the scale in favor of sufficiency," *Commonwealth* v. *Romero, supra* at 653 (citation omitted), and permitted the judge to find both knowledge of the presence of the drugs and the ability and intent to exercise control over them. The evidence placed this case in the category of automobile decisions in which a defendant's proximity, access, and collateral conduct (here, his sole occupancy of the vehicle, and the brief visit by a suspected buyer) permitted the inference of an intention to exercise control over contraband or forbidden weaponry in the vehicle. See, e.g., *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 936 (1998) (weapon under driver's seat; motion of concealment as police approached); *Commonwealth* v. *Bienvenu*, 63 Mass. App. Ct. 632, 638 (2005) (defendant, who owned vehicle, in back seat in close proximity to drug dealing instrumentalities); *Commonwealth* v. *Cotto*, 69 Mass. App. Ct. 589, 592-593 (2007) (defendant's proximity to weapon beneath his automobile seat and his foot movement pushing it out of sight raise circumstantial evidence above level of mere presence).

2. *Weight by extrapolation.* The defendant challenges the extrapolated calculation of the weight of the thirty-six packets of crack cocaine found in the console. An essential element of

---

[3]In isolation, cash and a cellular telephone are not substantial indicators of intent. However, in combination with others, these circumstances contribute to the over-all body of evidence indicating the defendant's intent to exercise control over the contraband as a dealer.

the crime of trafficking in a class B substance (such as crack cocaine) under G. L. c. 94C, § 32E(*b*)(2), as in effect at the time of the defendant's conviction, was that the weight of the substance amount to twenty-eight grams, or more, but less than one hundred grams. See *Commonwealth* v. *Johnson*, 410 Mass. 199, 201 (1991). Conviction of trafficking in an amount within that range brought a mandatory minimum term of imprisonment of not less than five years. G. L. c. 94C, § 32E(*b*)(2).[4] Conviction of trafficking in an amount of fourteen or more grams, but less than twenty-eight grams, carried a mandatory minimum term of not less than three years. G. L. c. 94C, § 32E(*b*)(1).[5]

Massachusetts precedent permits extrapolation processes. See *Commonwealth* v. *Johnson*, *supra* at 201 & n.1 (identifying Federal and State jurisdictions allowing similar method of computation); *Commonwealth* v. *Shea*, 28 Mass. App. Ct. 28, 33 (1989) (permitting "representative tests" where "numerous suspected bags . . . are received for official analysis, all with substances evidently alike — as to color, consistency, packaging, smell, etc."); *Commonwealth* v. *Coplin*, 34 Mass. App. Ct. 478, 485 (1993) (accepting chemist's "random sampling" of twenty out of 174 packets of cocaine to calculate average weight per package and to impute weight to other 154 packets).

Here, in closing argument, defense counsel questioned the validity of extrapolated measurement on the ground of the allegedly disparate sizes of the packaged crack cocaine units. That contention framed the issue for the judge as the trier of fact. Defense counsel had cross-examined the chemist aggressively about her conduct of the extrapolation. The question is whether the thirty-six packets presented an array of sufficiently proximate sizes to permit the use of an average weight from a representative sampling. The packets came in evidence as an exhibit. The judge was able to inspect the exhibit and to assess

[4]Under the current § 32E(*b*)(2), as amended effective August 2, 2012, a conviction of trafficking in an amount of thirty-six grams, or more, but less than one hundred grams, brings a mandatory minimum term of imprisonment of not less than three and one-half years. St. 2012, c. 192, § 21.

[5]Under the current § 32E(*b*)(1), also amended effective August 2, 2012, a conviction of trafficking in an amount of eighteen or more grams, but less than thirty-six grams, carries a mandatory minimum term of imprisonment of not less than two years. St. 2012, c. 192, § 21.

the relative sizes of the individual packets in light of the defendant's claim of a disparity rendering extrapolation unreliable. We are in no position to usurp his fact finding. We trust lay jurors with similar judgments. See *Commonwealth* v. *Connolly*, 454 Mass. 808, 831-832 (2009) (by extrapolation, jury may determine that "large, hard ball" weighed more than four ounces). Under the *Latimore* standard, we should respect the comparable determination of an experienced trial judge. In the light most favorable to the Commonwealth, the evidence permitted a rational trier of fact to find the aggregate weight of the packets and the larger chunk (an exhibit of undisputed weight) to amount to twenty-eight grams or more. See *Commonwealth* v. *Latimore*, 378 Mass. at 677.

This case offers a useful observation. The extrapolated weighing of multiple units of drugs is likely to present a recurrent issue. In cases in which an extrapolated figure places the charged weight marginally at or above a statutory gradient triggering a greater offense and a longer imprisonment,[6] defense counsel should develop and present any challenge to the extrapolation by pretrial discovery, and pretrial conference and memorandum.[7] By analogy, to preserve objections to deoxyribonucleic acid

---

[6]See G. L. c. 94C, § 32E(*a*)(1)-(4), calibrating trafficking in four graduated levels of marijuana amounts to four elevating mandatory minimum prison sentences; G. L. c. 94C, § 32E(*b*)(1)-(4), applying similarly to four levels of weight of, inter alia, cocaine amounts; and G. L. c. 94C, § 32E(*c*)(1)-(4), operating similarly on four levels of weight of heroin, morphine, or opium.

[7]Rule 14(a)(1)(A) of the Massachusetts Rules of Criminal Procedure, as amended, 444 Mass. 1501 (2005), provides mandatory discovery for a defendant of "(vi) [i]ntended expert opinion evidence . . . [including] all reports prepared by the expert, [and] (vii) . . . all intended exhibits, reports of . . . scientific tests[,] . . . [and] statements of persons [whom] the party intends to call as witnesses." Those sources typically will reveal the substance of the chemist's testimony, including the method and the results of the weight calculation of the substances at issue.

Rule 11(b)(2)(i) of the Massachusetts Rules of Criminal Procedure, as appearing in 442 Mass. 1509 (2004), requires a pretrial hearing and the inclusion in the hearing of the submission of the parties' pretrial conference report. Under rule 11(a)(2), the "conference report shall contain a statement of those matters upon which the parties have reached agreement, . . . and a statement of those matters upon which the parties could not agree which are to be the subject of pretrial motions."

At the pretrial hearing, the judge may evaluate the pretrial conference report and issue orders to promote the "fair, speedy and orderly disposition of

(DNA) analysis, a "defendant must file an appropriate pretrial motion stating the grounds for the objections, and must request a hearing in accordance with the principles set forth in *Canavan's Case*, 432 Mass. 304, 309-312 (2000), and *Commonwealth v. Lanigan*, [419 Mass. 15, 24-27 (1994)]," to test the reliability of a scientific or technical premise for proffered evidence. *Commonwealth v. Murphy*, 59 Mass. App. Ct. 571, 575 (2003), citing *Commonwealth v. Sparks*, 433 Mass. 654, 659 (2001). The presentation of the issue well in advance of trial will enable a judge to inspect a challenged exhibit and, if necessary, to order a hearing upon the validity of the extrapolation process.

In a case of weight only marginally above a statutory boundary, the pretrial conference may prove especially valuable to expose and to solve (by related papers or preliminary hearing, as necessary) such issues as the reliability of the randomness of the elements of the selected sampling by protocols or standards, the use of standard deviation factors, and the employment of computer algorithms, if any. We cite these questions as potential matters, and not as either a mandatory or an exhaustive agenda. This cautionary approach does not require the Commonwealth routinely to employ sophisticated statistical methods for the presentation of every representative sampling.[8] Nor does it compel the prosecution to prove the precise weight of the drugs. It need only establish that the weight exceeds the relevant threshold.

Extrapolation serves valid purposes, including performance of the Commonwealth's duty to prepare cases in accordance with the defendant's constitutional right to a speedy trial and its duty to employ finite public resources efficiently,[9] and ac-

the case." Mass.R.Crim.P. 11(b)(2)(iv). Finally, the judge may order a further hearing for compliance with orders promoting the preparation of the case. Mass.R.Crim.P. 11(c).

We find no fault with counsel in the present case. We simply note that these established procedures afford a far more suitable method of presentation and decision of an extrapolation issue than a motion in limine on the opening day of trial and especially an objection at the moment of testimony or offer of an exhibit in the presence of the jury.

[8]For example, if it were obvious to the naked eye that the samples weighed were smaller than the items not weighed, then simple extrapolation presumably would underestimate the total weight, and elementary arithmetic would show the total weight of the substance to exceed the relevant threshold.

[9]No authority proposes that the Commonwealth weigh individually every

complishment of the prosecution's entitlement to scientifically valid methods of proof. If the Commonwealth does submit statistical proof in lieu of precise total measurement, it should be prepared to demonstrate the reliability of its extrapolation, particularly in cases of results falling close to the line.

We do not pass beyond these general observations. The concurrence pushes forward to a discussion of "elementary precepts of statistics." *Post* at 451. However, nothing in the parties' briefs or the record appendix undertakes that effort. We do not have the benefit of specific evidence and an adversary dialogue, or reference to technical sources, concerning detailed statistical methods. While the effort of the concurrence is commendable, appellate discussion should not outdistance the supply lines provided by the work of the parties' attorneys and the trial judge. We should not travel too far out in front of the record and the briefs, and into territory of little or no precedent.

In this case, the decisive question is whether "*any* rational trier of fact could have found" that the aggregate weight of the seized drugs amounted to twenty-eight grams or more. See *Commonwealth* v. *Latimore*, 378 Mass. at 677, quoting from *Jackson* v. *Virginia*, 443 U.S. at 318-319. An experienced judge as fact finder received the testimony of the chemist, the physical collection of the challenged packets, and the arguments of counsel upon the disputed point. The *Latimore* standard entitles his finding to respect. We cannot vacate it upon the basis of statistical arguments never submitted to him or to us.

*Judgment affirmed.*


MILKEY, J. (concurring). I agree with the majority that "[w]e cannot vacate [the judgment] upon the basis of statistical arguments never submitted to [the trial judge] or to us." Nevertheless, as explained *infra*, I have concerns about whether the Commonwealth's use of statistical methods here was proper. I

packet of contraband from the dozens, hundreds, or more captured from suspects and offered in evidence.

join in affirming the judgment only because the defendant failed to preserve the issue.[1]

The Commonwealth offered testimony that the weight of the "crack" cocaine exceeded the relevant statutory threshold for the crime charged, and that testimony was admitted without objection. Accordingly, there is no merit to the defendant's claim that the evidence of weight was insufficient as a matter of law. See Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98-99 (2010). What the defendant really appears to be suggesting is that this evidence never should have been admitted because the Commonwealth had not established the reliability of the underlying extrapolation methods on which such evidence relied. Given that existing case law establishes that there is nothing inherently problematic about the use of such methods,[2] it was incumbent on the defendant to bring a timely challenge to the particular manner in which the Commonwealth used them here. The defendant did not raise such concerns prior to trial, nor did he even object to the introduction of the weight testimony at trial. The issue therefore has been waived. Compare Commonwealth v. Fernandez, 458 Mass. 137, 149-150 (2010) (no error in judge declining to hold full hearing, pursuant to Commonwealth v. Lanigan, 419 Mass. 15, 25-26 (1994), regarding drug field test where defendant did not raise issue until day trial commenced).

To the extent that the defendant now argues that the introduction of the evidence was an error that caused a substantial risk of a miscarriage of justice, the defendant carries the burden of proof. See Commonwealth v. Robinson, 83 Mass. App. Ct. 419, 427 (2013). In my view, the defendant has not made — and cannot make — such a showing based on the current limited record.

---

[1] I concur in the majority's analysis of the constructive possession issue with one qualification. In light of the current ubiquity of cellular telephones, I believe it is time for an appellate court to acknowledge that the mere presence of a single cellular telephone in a defendant's possession is of no appreciable inculpatory value. There was no evidence that the cellular telephone here was a disposable telephone (commonly known as a "burner").

[2] See, e.g., Commonwealth v. Johnson, 410 Mass. 199, 200-201 & n.1 (1991); Commonwealth v. Shea, 28 Mass. App. Ct. 28, 33 (1989); Commonwealth v. Coplin, 34 Mass. App. Ct. 478, 485 (1993).

Nevertheless, this case well illustrates some of the potential problems with the use of statistical methods.[3] I offer the following observations in order to ensure that my supporting affirmance of the judgment is not misunderstood, and to lend some clarity to how the underlying issues properly should be analyzed.[4]

According to the Commonwealth's certificate of drug analysis, the total weight of the thirty-six individual chunks of crack cocaine amounted to 14.29 grams (which, when added to the undisputed weight of the larger chunk, yielded a total weight of 31.87 grams). The Commonwealth effectively treats the 14.29 figure as the actual weight of the crack cocaine as measured using statistical methods.[5] This is inaccurate. Weighing all of the crack cocaine is the only means of actually measuring its total weight. The extrapolation method employed here does not measure the total weight; instead, it serves only to estimate that weight based on the assumption that the few samples the chemist chose are representative. Under elementary precepts of statistics, that estimate would be more or less reliable depending on such

---

[3]The current case law tends to mask these issues by treating the use of representative sampling the same regardless of whether the testing being done goes to the weight or the identity of the drugs. Compare *Commonwealth* v. *Shea*, 28 Mass. App. Ct. 28, 33 (1989) (approving use of sampling to prove that all nine packets contained cocaine), with *Commonwealth* v. *Coplin*, 34 Mass. App. Ct. 478, 485 (1993) (relying on *Shea* to approve estimation of total weight of 174 packets of cocaine). The analogy breaks down under scrutiny. There are commonsense reasons to assume that similar looking, similarly packaged substances found on someone are likely the same substance, a conclusion that does not rely on unvoiced statistical analysis.

[4]The majority protests that, by including analysis that is not argued "in the parties' briefs or the record appendix," I "outdistance the supply lines provided by the work of the parties' attorneys and the trial judge." *Ante* at 449. Such statements suggest that the issues flagged here are fundamentally different from those raised by the defendant. That is inaccurate. Indeed, the majority notes that the defendant at trial "questioned the validity of extrapolated measurement on the ground of the allegedly disparate sizes of the packaged crack cocaine units." *Ante* at 446. To be sure, the defendant, both below and on appeal, exhibited a less than full understanding of the specific nature of the potential problems here (a shortcoming shared by the Commonwealth). There is nothing inappropriate about trying to shed some light on how such issues properly should be examined based on elementary precepts of statistics.

[5]There are similar intimations by the majority. See *ante* at 443 & 446 (referring to the Commonwealth's computer program as "produc[ing] an aggregate net weight," and referring to extrapolation as a "method of computation").

factors as the sample size employed, whether the selection of the samples was actually random (or instead infected by selection bias), and the extent of variation among the weight of the sampled population. See generally Witte & Witte, Statistics §§ 12.4-12.5 (9th ed. 2010). Statisticians typically express the degree of comfort that such estimates provide through concepts such as "confidence levels." *Id.* at § 12.4.

The 14.29-gram figure came in evidence unadorned by any explanation of its statistical reliability in the particular circumstances. The algorithms and underlying assumptions upon which the figure is based were not revealed, and the computer program that the analyst used to generate the estimate was treated as a so-called "black box."[6] The absence of any explanation of the validity and the meaning of the Commonwealth's estimate renders it difficult for a lay fact finder to evaluate the import of this evidence. In such circumstances, there is a danger that the fact finder simply will accept the estimated weight without appropriate scrutiny. Cf. *Commonwealth* v. *Ferreira*, 460 Mass. 781, 785 (2011) (substantial risk of miscarriage of justice where "[t]he apparent simplicity of the mathematics belies the complexity of the conclusion regarding the probability of an accurate identification, and conceals the assumptions implicit in the conclusion").

In addition, there are at least two factors here that raise some particular concern about the appropriateness of relying on extrapolation methods. One involves lingering questions about whether the four samples were in fact randomly chosen.[7] The other involves the degree of variability among the samples.[8]

---

[6]In response to a question whether she took "the average [weight] and multipl[ied] that average by thirty-six," the chemist stated that the computer software does that "more or less." She also stated that the program "extend[ed] a standard deviation," without further explanation.

[7]Although the chemist characterized the samples she selected as "random," she agreed with defense counsel's characterization that her use of the term "random" means, "[Y]ou look[ed] at them and said, 'I will take this one, I will take this one, I will take this one.' " There was no testimony that the laboratory had instituted measures to ensure that sample selection was in fact randomly generated.

[8]The chemist characterized the thirty-six packets as being "pretty consistent in size," and she offered that this was why she "considered them one batch of thirty-six." In fact, the results showed a fairly significant amount of variation

Because of such concerns, I do not believe that we can say that the Commonwealth's invocation of its statistical methods was proper.[9]

in the weight of the "randomly" chosen packets, with the four samples weighing .2 grams, .3944 grams, .445 grams, and .53 grams. Thus, the crack cocaine in the largest packet sampled weighed more than two and one-half times that in the smallest packet sampled. To place these figures in context, the thirty-six packets would reach the requisite statutory threshold (in combination with the larger chunk of crack cocaine) if they averaged at least .29 grams each. Notably, a police witness testified that the bags found were packaged for sale at different prices. Therefore, the pronounced variation among the bags is hardly surprising.

[9]To the extent that the majority concludes that the Commonwealth has demonstrated that the use of statistics was proper here, I respectfully disagree that we are able to offer such assurances on the current record. Of course, as the majority observes, there are undoubtedly many situations where the Commonwealth could rely on representative sampling without invoking rigorous statistical analysis. *Ante* at 448. However, it is far from clear that this is one of them. Although the trial judge had the thirty-six packets of crack cocaine before him, it does not appear that he was even in a position to identify which four of the packets actually had been weighed (the individual packets do not appear to be marked and the chemist did not point out which ones were sampled). Without an established benchmark, trying to estimate the weight of the packets by "eyeballing" them would be, at a minimum, difficult. See *Commonwealth* v. *Montoya*, 464 Mass. 566, 574-575 (2013). Contrast *Commonwealth* v. *Connolly*, 454 Mass. 808, 831-832 (2009) (in case that did not rest on statistical extrapolation, jury could determine that "large, hard ball" of cocaine weighed more than four ounces, and hence more than one hundred grams).