COMMONWEALTH *vs.* JASON D. MAILLET. No. 00-P-1572. March 5, 2002. *Controlled Substances. Joint Enterprise. Evidence*, Joint enterprise.

Jason D. Maillet, the defendant, was convicted by a jury of distribution of heroin. G. L. c. 94C, § 32(*a*). He was the driver of the car that took two other men to and from a parking lot in Fitchburg where the drug transaction took place. On appeal, the only question is whether the Commonwealth's evidence proved anything beyond the presence of Maillet at the heroin sale. Were there factors in addition to presence from which the jury could have found knowledge by Maillet of the unlawful transaction and agreement to participate in it? Maillet preserved the question at trial by a motion for a required finding of not guilty.

For the defendant Maillet, the lodestar case is *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408 (1986). Saez was present — within an arm's length — when Gonzales, a man he was with, concluded a drug sale. Saez then walked away from the scene with Gonzales and returned to the same building with Gonzales, on two occasions looking up and down the street. We decided in *Saez* that the government had proved no more than that Saez was present as a crime occurred and knew that Gonzales was committing a crime. To take a joint venture case to the jury, there must be evidence that the defendant was present when the crime was committed, and had knowledge of the crime being committed, *plus* that the defendant was willing to assist in carrying out the crime. *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997). *Commonwealth* v. *Robinson*, 43 Mass. App. Ct. 257, 258 (1997).

From the Commonwealth's evidence in the case against Maillet, the jury could have found as follows: Peter LeDuc, a State trooper acting under cover, telephoned a suspected dealer, Mike Colon, to buy heroin. Colon instructed LeDuc to meet him in approximately fifteen minutes in the Walgreen's parking lot on John Fitch Highway in Fitchburg. He did not have a car that day, Colon added, and would be coming with some friends in a Chevrolet Blazer. Maillet was the driver of the Chevrolet Blazer that arrived at the rendezvous. *Plus factor no. 1*. The jury could infer from Colon's telling LeDuc he would arrive shortly in someone else's vehicle that Maillet would have learned the purpose for which he was to drive to the parking lot.

Trooper LeDuc arrived at the parking lot first and backed into a space at the edge of the lot. When the Chevrolet Blazer arrived with Maillet at the wheel, Colon was in the back, and a third person, Steven Botschafter, was in the front passenger seat. Maillet pulled in front of Trooper LeDuc's car so that the

passenger side of the Blazer was perpendicular to LeDuc's car, and blocked it. *Plus factor no. 2.* Maillet maneuvered the Blazer into a position sufficiently unusual in relation to LeDuc's car that the jury reasonably could infer that Maillet was informed about the purpose of the encounter and the need for keeping LeDuc in check. This had a bearing on Maillet's knowledge of and agreement to participate in the drug sale.

Botschafter stepped out of the Blazer, walked over to LeDuc's car, looked in, walked around it, looked at LeDuc, then walked to the street, looked up and down and looked around the parking lot. *Plus factor no. 3.* Maillet, who stayed in the Blazer, was able to watch Botschafter as he went about his surveillance. *Plus factor no. 4.* The jury reasonably could infer that Botschafter's movements, which Maillet could not help but see, would have informed Maillet (assuming he was not already in the know) that Botschafter was a lookout, and that a crime was in progress. Maillet was to assist in the crime's completion by driving Colon and Botschafter away.

After his walk-around surveillance, Botschafter took up a position on an edge of the parking lot along the highway. Colon then stepped out of the Blazer and into LeDuc's car on the passenger side. Maillet turned his head left to watch what was happening in LeDuc's vehicle. What was happening was that LeDuc exchanged $60 for three bags of heroin. Colon came back to the Blazer, followed by Botschafter, and Maillet drove the Blazer away. *Plus factor no. 5.* The jury reasonably could infer that Maillet watched the drug transaction and assisted its consummation by driving the seller and lookout away.

Of the "plus factors," numbers two and four have significant persuasive force that Maillet was more than an observer. The rest are less potent but when combined, the five "plus factors" add up sufficiently to allow a jury to find that Maillet had knowledge of the crime committed and assisted in carrying it out. If *Commonwealth* v. *Saez, supra,* falls at one end of the spectrum, this case falls more to the part of the spectrum occupied by *Commonwealth* v. *Pringle,* 22 Mass. App. Ct. 746, 750 (1986); *Commonwealth* v. *Robinson,* 43 Mass. App. Ct. at 260-261; *Commonwealth* v. *Fuentes,* 45 Mass. App. Ct. 934, 935-936 (1998); *Commonwealth* v. *Mattos,* 49 Mass. App. Ct. 218, 223-224 (2000); and *Commonwealth* v. *Hoa Sang Duong,* 52 Mass. App. Ct. 861, 867-868 (2001). As we observed in the *Mattos* case, *supra* at 224, the line that, as to unlawful conduct, separates knowledge from participation is an uncertain one. It is for the jury to sort out from the evidence on which side of the line the defendant stood.

*Judgment affirmed.*

*Margaret R. Guzman,* Committee for Public Counsel Services, for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.