COMMONWEALTH vs. JEFFREY SNOW.

No. 08-P-1539.

Suffolk. October 15, 2009. - January 14, 2010.

Present: LENK, GREEN, & TRAINOR, JJ.

*Firearms. Motor Vehicle,* Firearms. *Practice, Criminal,* Required finding. *Words,* "Plain view."

At the trial of a criminal defendant charged with carrying a firearm without a license in violation of G. L. c. 269, § 10(a), and other firearms charges, the record did not support the Commonwealth's position that a handgun was in plain view when it was found by police between the driver's seat and the console in an automobile driven by the defendant, but not owned by him; therefore, the evidence was insufficient to warrant a finding that the defendant constructively possessed the firearm. [118-122]

COMPLAINT received and sworn to in the Central Division of the Boston Municipal Court Department on August 27, 2007.

The case was tried before *Mark Hart Summerville,* J.

*Jeffrey P. Wiesner* for the defendant.

*Teresa K. Anderson,* Assistant District Attorney (*Gregory D. Henning,* Assistant District Attorney, with her) for the Commonwealth.

LENK, J. After attending a summer festival in Cambridge, the defendant, Jeffrey Snow, served as the designated driver for several friends and acquaintances who were themselves too intoxicated to drive. The standard shift car he drove was not his own. Around 12:30 A.M. on August 27, 2007, he was pulled over near Charles Circle in Boston by a State trooper for not having his headlights on and for going through a red light at low speed. In the course of this traffic stop, the defendant was arrested in connection with a bag of marijuana and a handgun, each found in different locations and ostensibly in plain view inside the car.

After trial by jury on a constructive possession theory as to both the marijuana and the handgun, the defendant was found not guilty of the charge that he possessed a class D substance (marijuana) in violation of G. L. c. 94C, § 34, and guilty of the three gun related charges, viz: carrying a firearm without a license, G. L. c. 269, § 10(*a*); possession of a firearm without a firearm identification card, G. L. c. 269, § 10(*h*); and carrying a loaded firearm, G. L. c. 269, § 10(*n*). On appeal, the defendant maintains that the evidence at trial was insufficient to prove that he possessed the firearm. We agree and reverse.[1]

*Facts.* Viewing the evidence in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the jury could have found the following facts. On August 27, 2007, at approximately 12:30 A.M., Jeffrey Snow was the designated driver in a car not his own, transporting several intoxicated friends, including a recent acquaintance who claimed to own the vehicle, but who was passed out in the back seat. All had attended the annual Caribbean Festival held that day in Cambridge. While on routine patrol, State Trooper Kevin O'Neil observed the car as it crossed the Longfellow Bridge and drove slowly through a red light without its headlights on. He pulled behind the vehicle, which was stopped in the left lane at another red light; the trooper did not observe any furtive movements by any of the car's occupants. Approximately ten seconds later, the trooper used his public address system to order the driver to pull to the right side of the road. The driver did so. After the trooper approached the vehicle and while the driver was looking for his license, the trooper smelled burnt marijuana. He radioed for backup which soon arrived, and the troopers, six in all, removed the occupants from the vehicle one at a time and kept them under observation.

While Trooper O'Neil was leaning in from the passenger side to search the car for drugs, Trooper Michael Tulipano searched the car from the driver's side. The front doors of the car were

---

[1]The defendant also claims error in the denial of his motion for new trial without a hearing, predicated on the ineffective assistance of trial counsel, as well in the admission of a ballistics certificate absent expert testimony in violation of *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009). In view of the result we reach, we need not address these contentions.

open, the dome light was on, and Trooper Tulipano used his flashlight; the headlights of the police cruiser behind the car were also on. Trooper Tulipano looked under the driver's seat and soon found on the floorboard between the pedals and the driver's seat a plastic bag containing what appeared to be marijuana. Then, kneeling on the seat to get to the console area, he "found a gun tucked between the driver's side seat and the console in the front seat." The handle was facing upwards and the barrel facing almost down, the gun situated below the tops of the driver's seat and console. Trooper Tulipano testified that if his "attention was focused anywhere than looking right down [into the crevice between the seat and the console he] wouldn't have seen that gun." He further testified that another officer, whom he did not identify, had to "reach into that crevice and pull it out." In response to police questions at the scene, the defendant indicated that he did not know to whom either the marijuana or the gun belonged.

*Discussion.* In reviewing the denial of a motion for a required finding of not guilty or for new trial, "we view the evidence in the light most favorable to the Commonwealth in order to determine whether the evidence was sufficient to satisfy a rational trier of fact of each element of the offense beyond a reasonable doubt." *Commonwealth* v. *Brown*, 401 Mass. 745, 747 (1988), citing *Commonwealth* v. *Latimore*, 378 Mass. at 677-678. See *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979). "The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding." *Commonwealth* v. *Brown, supra.* See *Commonwealth* v. *Nelson*, 370 Mass. 192, 200-201 (1976). The evidence here does not permit such a finding.

The case was tried on a theory of constructive possession. To show the defendant's constructive possession of the gun, the Commonwealth was required to prove more than that he was present in the same car as the weapon. *Commonwealth* v. *Almeida*, 381 Mass. 420, 421-423 (1980); *Commonwealth* v. *Brown*, 401 Mass. at 747. The Commonwealth must also prove that the defendant had knowledge of the gun, "coupled with the ability and intention to exercise dominion and control [over it]." *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), quoting from *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984).

*Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991). *Commonwealth* v. *Boria*, 440 Mass. 416, 418 (2003). *Commonwealth* v. *Ortega*, 441 Mass. 170, 174 (2004). Knowledge is essential because "it would not be a reasonable interpretation that a weapon is within the control of someone who does not know he has it." *Commonwealth* v. *Boone*, 356 Mass. 85, 87 (1969). Proof of the defendant's knowledge may be by circumstantial evidence, such as that the object was in plain view. *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 426 (1985). That is the Commonwealth's contention here.

While our case law has not explicitly defined under what circumstances an object is considered to be in "plain view," it nonetheless provides useful guidance. The cases appear to rest on the fundamental premise that an object said to be in plain view must have been plainly visible to the naked eye in the place where it was found. As in the search and seizure context, the police may not move a previously obscured object and then claim that it was plainly visible. See *Arizona* v. *Hicks*, 480 U.S. 321, 324-329 (1987) (serial numbers of a stereo were not in plain view where an officer had to move the stereo in order to see them). It is the government's burden to prove that the contraband was plainly visible. *Commonwealth* v. *Almeida*, 381 Mass. at 422. See *Commonwealth* v. *Boone*, 356 Mass. 85, 87 (1969); *Commonwealth* v. *Albano*, 373 Mass. 132, 133-135 (1977); *Commonwealth* v. *Bennefield*, 373 Mass. 452, 453-454 (1977). See also *Commonwealth* v. *Clarke*, 350 Mass. 721, 722 (1966).

The record does not support the Commonwealth's position that the gun was in plain view. Apart from the absence of any mention of the words "plain view" in the almost four hundred pages of trial transcript, there was no testimony establishing that the gun was plainly visible. Indeed, the Commonwealth's own witnesses testified that the gun was only recovered after a thorough search, made with the aid of multiple sources of light that had not been in use while the car was being driven. The circumstances here are quite unlike those in any of the reported cases where an object was deemed to be in plain view for the purposes of constructive possession.

The gun was not protruding above the seat in any way. Contrast *Commonwealth* v. *Than*, 442 Mass. 748, 751 (2004). Nor was there any suggestion that it was lying out in the open, either on

the floor, the backseat, or the center console. Contrast *Commonwealth* v. *Daley*, 423 Mass. 747, 752 (cocaine on the floor in front of the driver's seat); *Commonwealth* v. *Bailey*, 29 Mass. App. Ct. 1007, 1008 (1990) (seventeen and one-half inch sawed-off rifle "on the floor of the car on the driver's side, near the pedals"); *Commonwealth* v. *Gray*, 5 Mass. App. Ct. 296, 298 (1977) (guns lying out on the backseat). Here, in contrast, as Trooper O'Neil observed, the weapon was "pretty much stuck between the driver's seat and the console."

The police were unable to see the gun while standing outside the vehicle and shining their flashlights in. Contrast *Commonwealth* v. *Albano*, 373 Mass. 132, 134-135 (1977). Rather, O'Neil testified that he could not see the gun at any point before beginning a search of the car. That the gun was not plainly visible to the trooper, who was looking down from above and shining a police flashlight through the window, undercuts the contention that it had been in the defendant's plain view under quite different lighting conditions in a car not his own.

The Commonwealth has not called to our attention any case involving a weapon deemed in plain view that did not protrude in some fashion from its place of concealment. The Commonwealth relies heavily on *Commonwealth* v. *Bienvenu*, 63 Mass. App. Ct. 632, 634 (2005), but that case is readily distinguished. In *Bienvenu*, the police, as part of an inventory search, "found a 'softball sized' gray duct-taped ball between the driver's seat and the gear shift in the console area." *Id.* at 634. The object was later described as being "between the driver's seat, the gear shift and the console area." *Id.* at 639. The Commonwealth characterizes the case as involving a "ball of cocaine duct taped between" the driver's seat and center console, implying a considerable degree of concealment. That characterization, however, is incorrect since the ball was not in fact taped anywhere; it was the object *itself* that was wrapped in tape. *Id.* at 634. Nothing suggests that the object was concealed from view. The outcome of that case is consistent with our description of the object as having been located between the driver's seat, the gear shift and the console, where it was in the plain view of the defendant occupying the passenger seat near the drugs. Notably, the defendant passenger in *Bienvenu* also owned the car in which she was seated that was used to transport the

drugs, itself "an additional incriminatory factor" beyond mere presence. *Id.* at 638.

Here, in stark contrast, the gun was "below the seat," and "stuck between the driver's seat and the console."[2] The troopers were unable to see the weapon at any point before beginning a thorough search of the vehicle. During the initial stop, Trooper O'Neil, despite making "careful observations" of the vehicle's interior, did not see a gun. Even after the defendant stepped out of the car, when the interior of the vehicle was illuminated by a dome light, the officer's flashlight, and the headlights from the police cruiser, the trooper remained unable to see the weapon. Prior to stopping the car, Trooper O'Neil had not seen any interior lights illuminating the car as it was being driven. If the gun was not in the troopers' "plain view" when the car was flooded with light from three different sources, it cannot be said on this record that the Commonwealth established that the defendant had seen it in far less favorable lighting conditions. Moreover, there was no other evidence that the defendant had seen the gun or knew of its presence in a car that was not his own.

We discern no material difference between the facts of this case and those in *Commonwealth* v. *Almeida,* 381 Mass. 420. As here, the defendant in *Almeida* was convicted of constructively possessing a firearm in an automobile that he did not own, with no other evidence to connect him to the gun besides a claim that it was in plain view. *Ibid.* at 423. As here, there was "no

---

[2]At argument and without objection, the Commonwealth offered the panel color photographs of exhibits two and three to augment the black and white reproductions in the record on appeal. These exhibits depict the gun as being located between the driver's seat and the console. The circumstances in which the photographs were taken are not entirely clear and there appear to be differences between the two exhibits. They were evidently taken with the car's dome light on and with the use of a flash (causing a black gun to appear silver in exhibit three) by a police officer who was neither Trooper O'Neil nor Trooper Tulipano. In exhibit three, unlike exhibit two, the gun seems further forward and closer to the top of the seat and console. In exhibit two, the angle of the barrel is to the right whereas in exhibit three the angle is straighter. Trooper Tulipano did not testify as to whether the gun was left undisturbed in the position he first observed it either before or between the times the two photographs were taken. Trooper O'Neil's testimony suggests that while he did not remove the gun, someone else did so who "had to reach into the crevice to pull it out," though it is unclear when this took place.

evidence that the gun was easily visible." *Ibid.* In reviewing Almeida's conviction, the court noted that the trier of fact "would have had to speculate that the defendant knew the gun was [concealed in] a car he borrowed that evening, merely from his presence in that car." *Ibid.* So too here. The evidence was insufficient "to warrant a reasonable inference of personal knowledge of the presence of the gun," and the conviction cannot stand. *Ibid.*, quoting from *Commonwealth* v. *Bennefield*, 373 Mass. 452, 453 (1977).

*Judgment reversed.*