NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-840                                        Appeals Court


        COMMONWEALTH  vs.  ORMOND O., a juvenile.


                    No. 16-P-840.

    Norfolk.     February 7, 2017. - September 18, 2017.

           Present:  Green, Meade, & Agnes, JJ.



Delinquent Child.  Controlled Substances.  Joint Enterprise.
    Evidence, Constructive possession.  Search and Seizure,
    Motor vehicle, Plain view.  Practice, Criminal, Juvenile
    delinquency proceeding, Presumptions and burden of proof.



    Complaint received and sworn to in the Norfolk County
Division of the Juvenile Court Department on April 6, 2015.

    The case was tried before Mary M. McCallum, J.


    Frank H. Spillane for the juvenile.
    Varsha Kukafka, Assistant District Attorney, for the
Commonwealth.


    MEADE, J.  After a jury trial in the Juvenile Court, the

juvenile was found delinquent by reason of possession of

cocaine, in violation of G. L. c. 94C, § 34.[1]  The judge imposed

_____

    [1] The juvenile was found not delinquent of the greater
offense of trafficking in cocaine in an amount of eighteen grams

a sentence of six months of probation.  On appeal, the juvenile claims there was insufficient evidence to support his conviction.  We affirm.

1.  Background.[2]  On April 4, 2015, Quincy police Detective Dennis Keenan was patrolling the "South Quincy/Penn Hill" area of Quincy in plain clothes and in an unmarked cruiser.  Detective Keenan, a seven-year drug control unit veteran who had been involved in more than one thousand drug cases, had made arrests in that area.  Around 5:45 P.M., Keenan witnessed Tyler Mauritson exit a blue Infiniti motor vehicle, registered to a Brockton woman, that was parked in front of 35 Nicholl Street, which is Mauritson's home.  Keenan, who was familiar with Mauritson, watched as Mauritson entered his residence.

The Infiniti drove away and turned left onto Franklin Street, traveling into Braintree.  The detective followed the car as it went left onto Hayward Street and then right onto Quincy Avenue, traveling south.  While Keenan followed the Infiniti, he contacted Detective Michael Duran and requested that he speak to Mauritson and provide Keenan with an update.

The Infiniti turned onto the Arborway, which is a residential way that ends at the Fore River with side streets

_____

or more.  Before trial, the Commonwealth dismissed a charge that the juvenile conspired to violate drug laws.

[2] We use the names for individuals, streets, and so forth, as they appear in the trial transcript.

that lead back to Quincy Avenue.  Once the vehicle was on the Arborway, it began to slow down before it turned into a driveway located ten to fifteen houses down the street.  The car then backed up, turned around, and traveled back on the same route it had just driven.  While this was occurring, Keenan "tucked" his unmarked cruiser onto a side street to remain undetected. Keenan was aware of counter surveillance methods by which a suspect, who is being surveilled for illegal narcotics activity, employs certain driving tactics to determine if the police are following him.  Such tactics include the suspect pulling the car over and watching how many cars go by and in which direction they proceed, or driving around a rotary without exiting to monitor any cars that similarly follow.

As the Infiniti passed by Keenan, he noticed that the front passenger window was open and that there was both an operator and a front seat passenger.  The detective could not see if there were back seat passengers because the windows were tinted and closed.  The car continued back up the Arborway, back onto Quincy Avenue, then back onto Hayward Street on the same route it had just followed.  The vehicle did not go back to Franklin Street; instead, it continued toward Elm Street, which leads toward a highway on-ramp.  Keenan found it significant that the Infiniti had stopped, reversed direction, and then continued toward the same place from where it had started.

After Detective Duran provided Keenan with an update on his conversation with Mauritson, Keenan contacted the Braintree police to request assistance in stopping the Infiniti. When a Braintree police officer pulled his car behind the Infiniti and activated its siren, the Infiniti did not stop immediately, but turned right and traveled "a very short distance and stopped." When the car stopped, Keenan approached the passenger's side, while the Braintree police officer approached the driver. The driver was identified as Kevin Cardoza, and the front seat passenger was identified as the juvenile. Through the open back passenger's side window, Keenan saw Louis Andrade, the back seat passenger, take his right hand and place it on the floor. Keenan considered this movement "suspicious" and "significant," and he feared that Andrade might be retrieving a weapon. Keenan grabbed Andrade's hand and pinned it to the floor, then raised it up and told Andrade to keep his hands in the air.

Andrade was removed from the back seat of the Infiniti. As he was removed, Keenan saw a small bag on the seat where Andrade had been sitting. That bag contained seven individually packaged bags of cocaine. The other occupants were also removed from the vehicle.

After Andrade had been handcuffed, Detective Keenan went back to the area of the car where Andrade had put his hand on the floor and Keenan "could see right in front of [him] . . . a

larger plastic bag" that contained twenty-three individually packaged bags of cocaine and that weighed forty-four grams. Keenan thought Andrade's earlier hand movement to the car's floor was consistent with Andrade removing the cocaine from his person and putting it on the floor. Other than the front seat itself, no barrier separated the juvenile from the back seat area where the larger bag of cocaine was discovered.

From the car's occupants, the police also seized three knives, one from each suspect; seven cellular telephones (cell phones); and approximately $2,000, divided among the three occupants. The money was separated into "different folds" and denominations. Cardoza possessed the majority of the money, the juvenile had $294, and sixty-five dollars were either in Andrade's possession or in the glove compartment.

No narcotics were found on the juvenile's person or in the front seat area where he had been sitting, but he did possess one of the cell phones and a knife. When asked on cross-examination whether the juvenile "appear[ed] to have any control over" the cocaine, Keenan replied that "[h]e did not, nope."

Based on his training and experience, Detective Keenan explained that multiple cell phones are often used in the distribution of narcotics. Narcotics dealers keep both a personal phone and a phone for their illicit transactions. Phones are often "switched out" after a couple of weeks or

months "if a person selling narcotics is nervous that maybe the police are on to them or their phone, . . . they dump it, and they get a new phone and a new number. So they're constantly changing. But . . . their own personal phone usually stays the same, and that's why . . . sometimes we do recover more than one cell phone off a single person."

Keenan also testified that large sums of money, in different folds and denominations, often signifies drug distribution. He explained that this is because "a lot of times these deals happen this quick," and "[t]he drugs go in one, the money goes in your pocket, and if you were buying a $40 bag of narcotics, you could have two 20s or some denomination of $40. If it's 100, you could have five 20s, and that's why we find the different denominations. It's denoting the sales of the drug trafficker."

2. Discussion. The juvenile claims that there was insufficient evidence to support the verdict of delinquency by reason of possession of cocaine. We disagree. To evaluate this claim, we apply the same test as if we were evaluating the sufficiency of the evidence to support a criminal conviction. That is, "[w]hen analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'

Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 475 (2008), quoting from Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 152 (1999). . . . Rather, the relevant 'question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 319 (1979)." Commonwealth v. Rocheteau, 74 Mass. App. Ct. 17, 19 (2009). See Commonwealth v. Bell, 83 Mass. App. Ct. 82, 83-84 (2013).

When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See Jackson v. Virginia, supra at 324 n.16; Commonwealth v. Latimore, supra at 677-678. Here, the Commonwealth sought to prove the juvenile's possession of the cocaine as a joint venturer or as a principal based on a theory of constructive possession. However, there was no requirement that the Commonwealth prove precisely what role the juvenile played, i.e., whether he acted as a principal or as a joint venturer. See Commonwealth v. Rosa, 468 Mass. 231, 246 (2014); Commonwealth v. Silva, 471 Mass. 610, 621 (2015). Rather, under Commonwealth v. Zanetti, 454 Mass. 449, 466-468 & n.22 (2009), there need only be (1) proof of the juvenile's knowing participation in some manner in the commission of the offense

and (2) proof that the juvenile had or shared in the intent necessary for the offense.

Here, there was direct evidence that Andrade possessed the cocaine. Although the Commonwealth did not present direct evidence of possession of the cocaine on behalf of the juvenile, "evidence of a [juvenile's delinquency] may be primarily or entirely circumstantial." Commonwealth v. Lao, 443 Mass. 770, 779 (2005). Indeed, a joint venture may be proved wholly by circumstantial evidence. See Commonwealth v. Bright, 463 Mass. 421, 435 (2012). When we view the evidence in the light most favorable to the Commonwealth, the juvenile's claim of mere presence is defeated by several facts, and the reasonable inferences drawn from those facts. Detective Keenan's investigation began in a Quincy neighborhood known for drug activity where he had made arrests in the past.[3] His attention was drawn to the blue Infiniti, in which the juvenile was the front seat passenger. After Keenan saw an individual he knew leave the car, he followed the car on its seemingly meaningless path through residential south Quincy and into Braintree, and

---

[3] The dissent parses the detective's testimony to conclude the evidence does not suggest this area was known for drug activity. Post at    . However, the detective specifically testified that he had made arrests in this area and that the area was known to the Quincy drug control unit. In the light most favorable to the Commonwealth, it is a fair inference from this testimony that the area was known to the drug control unit because of drug activity.

then its return on a nearly identical path.  Having watched the car retrace its route, Keenan believed the car was conducting counter surveillance, which is a tactic used by drug traffickers to detect a police presence.

Once the car stopped, Detective Keenan saw Andrade, the back seat passenger, put his hand to the floor, directly behind the juvenile, where the transparent plastic bag[4] containing twenty-three individual bags of cocaine was found in plain view[5] and within the juvenile's reach.  After the juvenile and the other occupants were removed from the car, each was found in possession of a knife.  Although the juvenile had but a single

_____

[4] This plastic bag was larger than the bag containing seven individual bags of cocaine that was recovered from Andrade's seat.  Contrary to the dissent, the bags were not of "similar" size.  Post at    .

[5] Contrary to the juvenile's claim, the cocaine was in plain view.  Keenan testified that after he saw the bag containing seven individual bags of cocaine on Andrade's seat, he saw "a larger plastic bag" on the car's floor "right in front of [him]" that contained twenty-three individual bags of cocaine.  Also, contrary to the dissent's view, post at    , again viewing the evidence in the light most favorable to the Commonwealth, where no barrier separated the juvenile from the back seat area where the larger bag of cocaine was discovered, a rational jury could infer it was in his plain view as well, especially where it was neither hidden nor obscured.  Contrast Commonwealth v. Snow, 76 Mass. App. Ct. 116, 119 (2010) (gun not in plain view where no witness testified that it was plainly visible and it was only recovered after thorough search).  Nor, as the dissent would have it, post at    , is the permissibility of this inference contingent upon direct evidence that Keenan saw the juvenile turn and look at the cocaine on the floor.  See Commonwealth v. Beckett, 373 Mass. 329, 341 (1977) (inference drawn from circumstantial evidence "need only be reasonable and possible; it need not be necessary or inescapable").

cell phone in his possession, a total of seven cell phones were seized. As Keenan explained to the jury, multiple cell phones are often used in the distribution of narcotics. Also, more than $2,000 was recovered from the three occupants of the car. Even though Cardoza possessed most of the money, each occupant possessed multiple folds of money in different denominations that to Keenan could signify it was the proceeds from the fast-moving business of drug distribution.[6] See Commonwealth v. Crapps, 84 Mass. App. Ct. 442, 445 n.3 (2013) (cash and cell phone, in combination with other evidence, permitted finding of intent to exercise control over contraband in car).

From all of the evidence, and the reasonable inferences drawn therefrom, the jury could conclude that: the car was conducting counter surveillance to avoid the police discovering that the occupants were engaged in illegal drug activity; all three occupants of the car were similarly armed with a knife,[7]

---

[6] Contrary to the dissent's claim, post at , the connection of the money to drug distribution does not rest on speculation, but rather on Keenan's testimony, derived from his training and experience, that the denominations of the currency and its arrangement "in different folds" were indications that it was the proceeds from drug distribution.

[7] The dissent challenges the evidentiary significance of the three knives because the judge instructed the jury that their location was "irrelevant and immaterial." Post at . However, the dissent has read the judge's instruction out of context. The above instruction came in a response to a jury question regarding the whereabouts of the knives and the cell phones, as they had not been made exhibits at trial. In other

which implied an organized and collective effort; all three possessed different folds of money (totaling more than $2,000) and a total of seven cell phones, which both further indicated drug trade activity; the cocaine was in plain view and within the juvenile's reach; and the packaging and amount of the cocaine indicated that it was for sale. See Commonwealth v. Scala, 380 Mass. 500, 511 (1980). Viewing these facts collectively and in the light most favorable to the Commonwealth, the jury were entitled to employ their experience and common sense to reasonably conclude that the juvenile and the other occupants of the car were working together with a shared intent to, at the very least, commit the lesser included offense of possession of the cocaine in the car. See Commonwealth v. Longo, 402 Mass. 482, 487 (1988), quoting from Commonwealth v. Cerveny, 387 Mass. 280, 287 (1982) ("The line that separates mere knowledge of unlawful conduct and participation in it, is 'often vague and uncertain. It is

---

words, the jury were seeking to ascertain the current location of these items, which the judge properly told them was not relevant to their deliberations. At the end of the judge's response to the jury's question, she told them that their "deliberations are confined to just the testimony, evidence and exhibits that you have been given to consider." Detective Keenan unequivocally testified that all three occupants were armed with knives, that seven cell phones were recovered, and that "multiple cell phones," in his training and experience, are "often" kept by "people involved in the distribution of narcotics." The jury could properly consider this testimony, which supports their delinquency verdict.

within the province of the jury to determine from the evidence whether a particular defendant [has] crossed that line'").  A joint venture was properly established by the Commonwealth.  See Commonwealth v. Zanetti, 454 Mass. at 466; Commonwealth v. Bright, 463 Mass. at 435.  See also Commonwealth v. Drew, 4 Mass. App. Ct. 30, 32 (1976) ("Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense").[8]

This was not a simple case for the Commonwealth to prove. The evidence of delinquency was far from indisputable.  But it is not our (or the dissent's) task to substitute our judgment or belief for that of the jury to determine whether the juvenile's delinquency has been established beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. at 318-319.  Rather, our review is limited to whether a rational jury could have found that the juvenile possessed the cocaine beyond a reasonable doubt.  See id. at 319.  In other words, our appellate office does not

---

[8] Contrary to the juvenile's claim, Detective Keenan's testimony that at the time he saw the cocaine in the car, the juvenile did not appear to have control over it, does not defeat the Commonwealth's case for joint venture.  Not only does the claim fail to view the evidence in the light most favorable to the Commonwealth, it also ignores the basic premise that the jury, not the detective, was charged with evaluating the evidence to determine delinquency.  Perhaps more importantly, although "[m]ere presence is insufficient to establish joint venture liability[,] . . . the Commonwealth [was] not required to prove exactly how [the juvenile] participated in the [crime]."  Commonwealth v. Deane, 458 Mass. 43, 50 (2010).

permit us to reweigh the evidence ourselves to determine whether the jury made the correct delinquency determination but, rather, after viewing the evidence in the light most favorable to the prosecution, we may only determine whether the jury made a rational decision regarding the juvenile's delinquency.  See Herrera v. Collins, 506 U.S. 390, 402 (1993).  Indeed, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  McDaniel v. Brown, 558 U.S. 120, 133 (2010), quoting from Jackson v. Virginia, supra at 326. See Commonwealth v. Wilborne, 382 Mass. 241, 245 (1981), quoting from Commonwealth v. Amazeen, 375 Mass. 73, 81 (1978) ("To the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies'").

In the end, the case against the juvenile "was not overwhelming and involved some uncertainties that cannot be erased, but it was also not so weak as to render the jury verdict irrational.  A rational jury might well have acquitted without violating its oath; but, drawing all reasonable inferences in favor of the prosecution, a rational jury could

also [have found the juvenile delinquent]." <u>Stewart</u> v. <u>Coalter</u>, 48 F.3d 610, 616 (1st Cir.), cert. denied, 516 U.S. 853 (1995).

<u>Adjudication of delinquency</u>
<u>affirmed</u>.

AGNES, J. (dissenting). At the Commonwealth's request and over the juvenile's objection, the judge charged the jury on two theories of delinquency by reason of possession of cocaine: constructive possession, and joint venture[1] by aiding and abetting. The jury were directed to return a general verdict. See Commonwealth v. Zanetti, 454 Mass. 449, 468 n.22 (2009). In order to prove its case under either of these two theories, the Commonwealth was required to prove beyond a reasonable doubt that the juvenile had knowledge that the back seat passenger had the cocaine in his possession. See Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 410-411 (2013); Commonwealth v. Lugo, 89 Mass. App. Ct. 229, 232 (2016). Cf. Commonwealth v. Hernandez, 439 Mass. 688, 694 (2003) ("Where it is a stash of cocaine that forms the basis for a charge of trafficking, a defendant can only share an intent to traffic if he knows the stash exists"). Because I do not believe that the evidence was sufficient to permit the jury to infer that the juvenile sitting in the front seat had knowledge of the cocaine in the actual possession of the back seat passenger, I respectfully dissent.[2]

_____

[1] Although the Supreme Judicial Court has adopted the language of aiding and abetting, we have continued to use joint venture in our case law. See, e.g., Commonwealth v. Britt, 465 Mass. 87, 98 (2013).

[2] While my focus is on the element of knowledge, even if an inference that the juvenile had knowledge of the presence of the cocaine in the car was warranted, it does not lead ipso facto to

The question before the court is whether the Commonwealth proved beyond a reasonable doubt that the juvenile, who was in the front passenger seat of the car, had knowledge of the cocaine that was in the actual possession of the back seat passenger.

Discussion. 1. The essential facts. A very brief statement of the essential facts is necessary to clarify that evidence of the juvenile's knowledge of the cocaine in the possession of the back seat passenger is lacking. There is no evidence of any interaction among the occupants of the car prior to or during the police stop. When Detective Keenan approached the car on the back passenger's side, the only observation he

---

the conclusion that the juvenile had constructive possession of the cocaine, or that he was aiding and abetting the back seat passenger's possession of the cocaine. Under the theory of constructive possession, proof of the juvenile's ability and intent to exercise control over the cocaine is independent of his knowledge of its presence. See Commonwealth v. Romero, 464 Mass. 648, 658 (2013). Here, there is no evidence that the juvenile had both the ability and the intent to exercise control over the cocaine. See Commonwealth v. Manzanillo, 37 Mass. App. Ct. 24, 27-28 (1994); Commonwealth v. Pimentel, 73 Mass. App. Ct. 777, 785-786 (2009); Commonwealth v. Elysee, 77 Mass. App. Ct. 833, 846-847 (2010). Contrast Commonwealth v. Sadberry, 44 Mass. App. Ct. 934, 936 (1998). Similarly, under the theory of joint venture by aiding and abetting the back seat passenger's possession of the cocaine, the absence of evidence of any interaction between the juvenile and that passenger prior to or during the police stop of the car, and the absence of any evidence of the juvenile's consciousness of guilt when the cocaine was discovered by the police belies the Commonwealth's claim that there was a "union of minds" between them. Commonwealth v. Sanchez, 40 Mass. App. Ct. 411, 419 (1996). See Commonwealth v. Romero, supra at 659 n.9.

made was that the back seat passenger, Louis Andrade, reached his hand to the floor.[3]  Detective Keenan opened the back door and grabbed Andrade's hand, pinning it to the floor.  After Andrade was removed from the car, Detective Keenan found, on the seat where Andrade had been sitting, a bag that was small enough to fit in one's palm containing seven individual packages of cocaine.  Keenan stated that this bag had been under Andrade's buttocks.  Detective Keenan returned to the car after Andrade was secured and found a second bag of a similar size containing twenty-three individual packages of cocaine on the back floor where Andrade had reached with his hand.  There is no evidence that the juvenile made any gestures or spoke any words.[4]  Each of the occupants had in his possession a knife, but no description of the knives was given.  Seven cellular telephones (cell phones) also were seized by the police.  The juvenile had only one cell phone on his person, and there was no evidence as to the location of the other cell phones.  The police found approximately $2,000 in cash, most of which was found in the possession of the driver.  The juvenile had $294 (of unspecified denominations) in his possession.  There is no evidence that any

---

[3] Detective Keenan testified that the reaching motion that Andrade had made was "consistent with him taking cocaine from his person and putting it on the floor."

[4] Detective Keenan testified that he did not make any observations that led him to conclude that the juvenile had control over the cocaine.

of the cash was located in plain view inside the car.  There is

no evidence of any drug paraphernalia located in plain view

inside the car.  There is no evidence that any item of property

associated with the juvenile was found in proximity to the

cocaine that was found in the back seat area.  Finally (and here

I part company with the majority), there was no evidence that

the cocaine seized from the back seat area where Andrade had

been sitting was in the plain view of the juvenile.  See

Commonwealth v. Snow, 76 Mass. App. Ct. 116, 119-120 (2010)

(discussing meaning of "in plain view").

2.  The foundation for an inference of personal knowledge

is lacking.  Proof of the juvenile's presence in the passenger

compartment of a car where cocaine is found, by itself, is not

sufficient to permit an inference that the juvenile had

knowledge of the cocaine without "other incriminating evidence."

Commonwealth v. Albano, 373 Mass. 132, 134 (1977).[5]  The other

incriminating evidence or "plus factors"[6] that commonly supply

---

[5] "The defendant's knowledge is personal to him; there is no substitute for personal knowledge."  Commonwealth v. Albano, supra.

[6] In the context of a prosecution for possession of contraband based on a theory of constructive possession, "plus factors" refer to circumstantial evidence, other than the mere fact that the defendant and the contraband are found in the same location, that points toward the defendant's knowledge or ability and intent to exercise control of the contraband. Commonwealth v. Romero, 464 Mass. 648, 654 (2013).  See Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 149 (1999).

the basis for an inference of knowledge are (1) that the contraband is found in plain view, (2) that the defendant is observed making a movement toward the contraband, (3) that personal property belonging to the defendant is found near the contraband, and (4) that the defendant makes a statement or engages in conduct that reflects consciousness of guilt. See the Appendix to this opinion (collecting cases on plus factors in knowledge assessments). None of these factors is present in this case, and the majority's reliance on the following factors is misplaced.

a. Plain view. After Andrade was removed from the back passenger seat, Keenan saw "right under the seat where [Andrade] was sitting[,] not next to him like literally under his seat where he was sitting[,] . . . [a] bag and it had seven bags of individually packaged white powder [that Keenan] believed to be cocaine." Detective Keenan later described the location of this bag as having been "under [Andrade's] buttocks where he was sitting."

When Detective Keenan initially approached the car, he saw Andrade "put [his hand] right down to the floor." Concerned that Andrade might have a weapon, Detective Keenan pinned Andrade's hand down and then raised it up and told Andrade to keep his hands in the air. After Andrade was removed from the car and secured, Detective Keenan returned to the area of the

back passenger seat where he had seen Andrade reach to the floor. "[O]n the floor [Keenan] could see right in front of [him] . . . a larger plastic bag and it had multiple bags of individually packaged white powder[,] . . . 23 in total which [Keenan] believed was cocaine." Detective Keenan later described the location of this bag as "right where [Andrade] put his hand down[,] . . . right where [Keenan] pinned [Andrade's] hand, . . . right in that area that's where [Keenan] recovered the plastic bag and the 23 bags of cocaine in it."

The two bags removed from the back passenger seat area were the only drugs found in the car. When defense counsel cross-examined Detective Keenan about the size of these bags, the following exchange occurred:

Q.: "The cocaine, would it be fair to say that you could hide it in your fist?"

A.: "The smaller bag, very easily. The bigger one might be a bit more."

Q.: "Okay. It might be hard to hide it in the fist?"

A.: "Yes. You're saying hide it?"

Q.: "Well, I mean would it fit in your hand?"

A.: "Yes, absolutely."

The majority states that a rational jury could infer that the cocaine, which Andrade had placed on the floor in front of the back passenger's side seat as Detective Keenan approached the car, was in the plain view of the juvenile where "no barrier

separated the juvenile from the back seat area." <u>Ante</u> at note 6. In order for a front seat passenger to see a small item in the hand of a back seat passenger in a standard car, it is necessary for the front seat passenger to turn his body and look over or around his seat. There is no evidence that the juvenile moved from the moment he was first observed by the police until he was removed from the car. The absence of a "barrier" adds nothing to the basis for the inference that the juvenile had knowledge of the cocaine.

The majority states, <u>ante</u> at    , that we must presume that the inference of knowledge was warranted based on the doctrine that an appellate court passing on the sufficiency of the evidence in a criminal case must view the evidence in the light most favorable to the Commonwealth. See <u>Commonwealth</u> v. <u>Merry</u>, 453 Mass. 653, 660-661 (2009). Yet it is also settled doctrine that the mere possibility of an inferential fact (here, that the juvenile may have turned around in his seat and observed a small bag held by the back seat passenger) does not qualify as a reasonable and possible inference that a jury may draw from the evidence. See <u>id</u>. at 661. No less than in <u>Commonwealth</u> v. <u>Ferguson</u>, 384 Mass. 13, 18 (1981), "[t]he Commonwealth's theory of this case requires piling inference upon inference."[7] Without

---

[7] For this reason, cases in which the presence of contraband in plain view inside a vehicle is a sufficient plus factor to

this inference, the Commonwealth failed to connect the juvenile to the cocaine found in the possession of Andrade.

b. <u>High crime area</u>.  The majority notes that the events took place "in a Quincy neighborhood known for drug activity where [Detective Keenan] had made arrests in the past."  <u>Ante</u> at .  Keenan's testimony, I submit, was far less suggestive.  He stated:  "I've conducted investigations and arrests in that general area."

c. <u>Counter surveillance activity</u>.  The majority also notes that Detective Keenan testified about counter surveillance, which he stated consisted of measures taken by a person to detect whether he or she is being followed by the police.  <u>Ante</u> at  .  Detective Keenan testified that he found it significant that the car traveled in one direction for about three minutes, then it turned and traveled in the reverse direction before it was stopped.  What is absent from Detective Keenan's testimony and the majority opinion, however, is an explanation of why this conduct on the part of the driver is relevant to the knowledge or intent of the juvenile passenger.  The relevance, of course, depends on whether the juvenile was engaged in a joint venture

permit an inference that an occupant had knowledge of the presence of the contraband have no application to the facts in the case before us.  See, e.g., <u>Commonwealth</u> v. <u>Romero</u>, 464 Mass. 648, 653-654 (2013).  Cf. <u>Commonwealth</u> v. <u>Gonzalez</u>, 452 Mass. 142, 147 (2008).

with the driver and the back seat passenger -- which is a matter the Commonwealth alleged but failed to prove.

d. Cocaine packaged for sale. Detective Keenan's testimony about the significance of finding "individually packaged [bags of drugs] for the street-level sales," certainly suggests that Andrade's possession was with the intent to distribute, but it contributes nothing to the question whether the juvenile had personal knowledge that the drugs were in the car.

e. Knives and cell phones. The majority also seeks to envelop the juvenile in a tapestry of guilty knowledge on the basis of other evidence as flimsy as gossamer. The majority states that each of the three occupants had a knife, that a total of seven cell phones were seized by the police, and that "more than $2,000 was recovered from the three occupants." Ante at . None of this evidence, however, supports an inference that the juvenile had personal knowledge of the cocaine, or the intent and ability to control it. See Commonwealth v. Cullity, 470 Mass. 1022, 1023-1024 (2015). First, we know nothing about the knives,[8] and the judge instructed the jury that the location of the knives was "irrelevant and immaterial" and could not be

---

[8] The record does not contain a description of the knife possessed by the juvenile or the knives possessed by the other two occupants.

considered.[9] Second, with regard to the $2,000, most of it was found on the person of the driver. <u>Ante</u> at   . The majority's effort, <u>ante</u> at   , to connect the $294 found on the juvenile[10] to the money found on the driver or to drug trade activity rests entirely on speculation.[11] Third, the majority indicates that

---

[9] The judge's instruction was as follows:

"Information such as the location of the knives you may have heard about during the course of the evidence in this trial or the seven cell phones that you may have heard about during the course of the trial, if you collectively recall any evidence on that. The location of those items is irrelevant and immaterial at this point in your decision-making process because that information was not given to you to consider. The only information given to you to consider was the evidence regarding cell phones, the number of cell phones that was testified to and or depicted in a photocopy of a photograph, Exhibit Number 1. That's the only evidence the parties are asking you to consider.

". . .

"The location of the other items, such as knives, was not introduced during the course of this trial during the testimony or in the exhibits. So you cannot consider the location of those items, only the evidence as it currently exists with respect to those items, that being the testimony. And your deliberations are confined to just the testimony, evidence and exhibits that you have been given to consider."

[10] Two hundred and ninety-four dollars "is not a particularly large sum. It is not unusual for law-abiding persons to carry such an amount on their person. There was no evidence that the defendant was unemployed and thus unlikely legitimately to have that amount of cash." <u>Commonwealth</u> v. <u>Sepheus</u>, 468 Mass. 160, 166 (2014).

[11] The majority states that "each occupant possessed multiple folds of money in different denominations that to [Detective] Keenan could signify it was the proceeds from the

the seizure of the seven cell phones was significant because drug dealers use them to facilitate the distribution of drugs and frequently swap one for another.  Ante at    .  However, the evidence was that the juvenile possessed only one cell phone. And there is no evidence as to the location of the other cell phones.

3.  The relevant cases support the juvenile's position that he did not have constructive possession of the cocaine.  In an unbroken and lengthy line of appellate decisions, we have reiterated that being a passenger in a vehicle does not, without more, permit a jury to infer that the person has constructive possession of the contents of the vehicle.[12]  While circumstantial evidence and the reasonable inferences that may be drawn from that evidence may support the conclusion that a

---

fast-moving business of drug distribution."  Ante at    .  This was not Detective Keenan's testimony at trial.  He testified that each occupant had different denominations of money on his person and that the money each of them had was folded in different ways.

[12] A person's physical proximity to an area in which contraband is found, standing alone, is insufficient to permit the inference of constructive possession because that conclusion "is forged entirely of suspicion, the product of inference improperly piled upon inference."  Commonwealth v. Gonzalez, 42 Mass. App. Ct. 235, 240 (1997).  Accord Commonwealth v. Sespedes, 442 Mass. 95, 100 (2004) (evidence that defendant had keys to and had been seen leaving apartment where large quantity of drugs was seized from inside dropped ceiling was insufficient to establish knowledge of drugs).  "Nor is possession proved simply through the defendant's association with a person who controlled the contraband."  Commonwealth v. Booker, 31 Mass. App. Ct. 435, 437 (1991).  Contrast Commonwealth v. Antonio, 45 Mass. App. Ct. 937, 938 (1998).

person had constructive possession of the drugs found inside a vehicle or was engaged in a joint venture with others in the vehicle, a plausible hypothesis of guilt is not a substitute for proof beyond a reasonable doubt. See Commonwealth v. Rodriguez, 456 Mass. 578, 583 (2010).[13]

---

[13] In Rodriguez, supra at 582 (quotations omitted), the Supreme Judicial Court stated:

> "A conviction may be based on circumstantial evidence alone, as long as that evidence is sufficient to find the defendant guilty beyond a reasonable doubt. The evidence must allow[] us to do more than find that there was some record evidence, however slight, to support each essential element of the offense. Nor will the evidence be sufficient if it relies on conjecture or speculation, or if it tends equally to support either of two inconsistent propositions. If a rational jury necessarily would have had to employ conjecture in choosing among the possible inferences from the evidence presented, the evidence is insufficient to sustain the Commonwealth's burden of proving guilt beyond a reasonable doubt."

A good illustration of a case involving no more than a plausible hypothesis of constructive possession is Commonwealth v. Garcia, 409 Mass. 675 (1991). In that case, the Supreme Judicial Court concluded:

> "The sum of the Commonwealth's evidence against Garcia is his presence in the vehicle where the cocaine was discovered. The Commonwealth contends that an additional factor pointing to knowledge can be found in the fact that the cocaine was extremely valuable. The Commonwealth argues that it is unlikely that anyone would lend a vehicle containing such valuable contents unless the borrowers knew of those contents, and that therefore a jury could infer that both Heredia and Garcia knew of the cocaine. This argument is simply another way of stating that one can infer knowledge of contraband from its presence in a vehicle. As the Commonwealth concedes, presence alone is not sufficient to prove knowledge and intent to control contraband. There was insufficient evidence to prove that

The cases relied upon by the majority are distinguishable from the case before us. In Commonwealth v. Crapps, 84 Mass. App. Ct. 442, 443 (2013), the police seized a sock containing cocaine from in the center console of a vehicle. The defendant was the driver and sole occupant of the vehicle. Id. at 444. The police found personal papers belonging to the defendant on the front passenger seat, a cell phone in the driver's side door pocket, and $585 in cash in the defendant's pocket, and they had observed the defendant engage in suspected drug dealing behavior. Id. at 444-445. In reasoning that the evidence was sufficient to permit a jury to infer that the defendant had knowledge of the presence of the cocaine and the ability and intent to exercise control over it, we stated that "[t]he evidence placed this case in the category of automobile decisions in which a defendant's proximity, access, and collateral conduct (here, his sole occupancy of the vehicle, and the brief visit by a suspected buyer) permitted the inference of an intention to exercise control over contraband or forbidden

---

Garcia had knowledge of the cocaine, and thus had constructive possession of it."

Id. at 687-688. See Commonwealth v. Meehan, 33 Mass. App. Ct. 262, 265-266 (1992) (assuming evidence established defendant was involved in illegal drug dealing, police observation of three private conversations within one-hour period between defendant and person found to be in possession of approximately forty grams of cocaine was insufficient to support conclusion that defendant had constructive possession of cocaine).

weaponry in the vehicle." Id. at 445. Thus, although the presence of cash and a cell phone was used in Crapps to support a finding of intent to exercise control over the contraband -- unlike the case before us -- that evidence was supplemented with additional evidence. Similarly, in Commonwealth v. Albano, 373 Mass. at 134-135, the Supreme Judicial Court held that a plainly visible firearm protruding from under the seat where the defendant driver was seated, "an area to which he had easy access," combined with "other incriminating evidence," was sufficient to permit a jury to find that he had knowledge of that firearm. Id. at 134, 135.

Just as presence in the same location as the contraband, standing alone, is insufficient to establish knowledge of that contraband, presence alone is insufficient to establish a joint venture. See Commonwealth v. Deane, 458 Mass. 43, 50 (2010). Our decision in Commonwealth v. Maillet, 54 Mass. App. Ct. 910, 910 (2002), is a good illustration of the additional evidence needed to "take a joint venture case to the jury." In Maillet, we identified this additional evidence as consisting of the following five plus factors. First, as the drug dealer had told the undercover officer, who was posing as a buyer, that he (the dealer) would arrive at the parking lot in another individual's vehicle, the jury could infer that the defendant had learned why he was to drive to the parking lot. Ibid. Second, as the

defendant had parked his vehicle so that it blocked the undercover officer's vehicle, the jury could infer that the defendant had been informed of the purpose of the meeting and the need to keep the undercover officer in check. Id. at 910-911. Third and fourth, as the defendant had been able to watch a third individual, who had exited from the defendant's vehicle, surveil the area, the jury could infer that this individual's actions would have informed the defendant that the individual was a lookout and that a crime was in progress. Id. at 911. Fifth, as the defendant had watched what happened in the undercover officer's vehicle, the jury could infer that the defendant saw the drug transaction and assisted in it by driving the dealer and the lookout away. Ibid. As this recitation indicates -- unlike the case before us -- the defendant's presence in Maillet was supplemented with additional evidence.

Although the determination whether the evidence was sufficient to support proof beyond a reasonable doubt cannot be reduced to a simple process of "color matching" with prior cases, I think our decision in Commonwealth v. Cormier, 41 Mass. App. Ct. 76 (1996), is analogous and should control the outcome here. In Cormier, the defendant was convicted of trafficking in cocaine after police officers pulled over a speeding vehicle, in which he and two other men were present. Id. at 76, 78. The defendant was seated alone in the back seat. Id. at 78. The

occupants were ordered to exit from the vehicle. Ibid. The front seat passenger was barefoot, while the driver and defendant were wearing shoes. Ibid. The police noticed a pair of white sneakers on the floor behind the front passenger seat and in front of where the defendant had been sitting. Id. at 78-79. As the officers began to search the vehicle, the driver moved to the vehicle, grabbed the sneakers, and attempted to flee. Id. at 79. The officers found more than one hundred grams of cocaine inside the sneakers. Ibid. On appeal, this court concluded that even though the sneakers containing the drugs were in close proximity to the defendant in the back seat area, the evidence was insufficient to permit an inference that the defendant had knowledge of the drugs where the drugs were inside the sneakers and not readily visible; the driver exercised control over the sneakers by attempting to flee with them; and another passenger, not the defendant, was barefoot.[14] Id. at 79-80.

---

[14] Another useful guidepost is Commonwealth v. Bennefield, 373 Mass. 452 (1977). There, as in this case, a vehicle with three occupants was stopped. Id. at 453. The defendant, as in our case, was the front seat passenger. Ibid. On the back floor of the vehicle, an officer, with the aid of his flashlight, observed a shotgun, which the back seat passenger was attempting to shove underneath the front seat. Ibid. These facts alone, the court said, were insufficient to permit an inference that the front seat passenger had knowledge of the presence of the shotgun. Ibid.

Conclusion.  While it is not our role to weigh the evidence, it is our duty to overturn a jury's verdict that is based on inferences not shown to have been reasonable.  See, e.g., Corson v. Commonwealth, 428 Mass. 193, 198-200 (1998).  The majority opinion, in my view, overlooks an important nuance in the standard of review that is based on Jackson v. Virginia, 443 U.S. 307 (1979), and Commonwealth v. Latimore, 378 Mass. 671 (1979).

> "This test has multiple parts.  Sufficiency of the evidence challenges in most cases are resolved on the basis of the first part of the Jackson-Latimore standard . . . .  We defer to the jury or judicial fact finder's judgment about the sufficiency of the evidence when, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis original).  Jackson v. Virginia, [supra] at 319. . . .  The second part of the Jackson-Latimore standard is reserved for cases . . . where proof of an essential element such as intent [or knowledge] has been deemed sufficient by the fact finder on the basis of a conjecture, as opposed to a reasonable inference, from the evidence.  '[I]t is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt.' [Commonwealth v.] Latimore, [supra] at 677-678."

Commonwealth v. Sepheus, 82 Mass. App. Ct. 765, 787-788 (2012) (Agnes, J., dissenting), S.C., 468 Mass. 160 (2014).  Any doubt that an appellate court has a responsibility to assess the strength of the connection between the evidence presented to a jury and the inferences that may be drawn from that evidence in

the context of applying the Jackson-Latimore standard has been put to rest. See Commonwealth v. Littles, 477 Mass. 382, 388 (2017).

Ultimately, the Commonwealth's case is based primarily on the juvenile's physical proximity to the contraband, a theory we have repeatedly rejected. See, e.g., Commonwealth v. Almeida, 381 Mass. 420, 422-423 (1980). A plausible hypothesis of guilt is not evidence that satisfies the standard of proof beyond a reasonable doubt. See Commonwealth v. Garcia, 409 Mass. 675, 687-688 (1991). In my view, the jury "cross[ed] the bounds of permissible inference and enter[ed] the forbidden territory of conjecture and speculation." Curry v. United States, 520 A.2d 255, 263 (D.C. 1987). Accordingly, I believe it was error to deny the juvenile's motion for a required finding of not guilty.

Appendix.

   The following two lists include only published
Massachusetts decisions addressing whether the evidence was
sufficient to permit an inference that the defendant had
knowledge of the contraband (drugs or guns) in the vehicle in
which the defendant was an occupant.  These lists are
nonexhaustive.

1.   Insufficient evidence to permit inference of knowledge

Commonwealth v. Almeida, 381 Mass. 420, 422-423 (1980) (evidence
that defendant was driving borrowed vehicle and retrieved his
wallet from console containing gun was insufficient to permit
inference of knowledge of gun where there was no evidence
permitting inference he would have seen or felt gun when he put
wallet in console).

Commonwealth v. Brown, 401 Mass. 745, 747-748 (1988) (evidence
that prior to stop, police observed movement inside stolen
vehicle operated by defendant and containing front seat
passenger was insufficient to permit inference of knowledge of
guns found under front passenger seat).

Commonwealth v. Garcia, 409 Mass. 675, 687-688 (1991) (evidence
that defendant was in vehicle he did not own was insufficient to
permit inference of knowledge of cocaine in locked trunk).

Commonwealth v. Manzanillo, 37 Mass. App. Ct. 24, 26 (1994)
(evidence that defendant was owner and driver of van that
contained two other passengers, "hip bag" containing cocaine was
found under shopping bag behind driver's seat, and defendant
made statement to police that equally supported conclusion he
either knew of cocaine before stop or learned of cocaine after
stop was insufficient to permit inference of knowledge of
cocaine).

Commonwealth v. Movilis, 46 Mass. App. Ct. 574, 577-580 (1999)
(evidence that defendant was driver, not owner, of vehicle at
location of drug transaction described by informant, possessed
keys to vehicle, went into café with passenger, and was seen at
table with small amount of cocaine was insufficient to permit
inference of knowledge of drugs found in secret compartment in
vehicle, where there was no evidence of similarity between
cocaine on table and in vehicle).

Commonwealth v. Snow, 76 Mass. App. Ct. 116, 118-122 (2010) (evidence that police found gun between driver's seat and center console of vehicle that defendant was driving, but did not own, was insufficient to permit inference of knowledge of gun where gun, found only after thorough search of vehicle, was not in plain view and no other evidence connected defendant to gun).

2. Sufficient evidence to permit inference of knowledge

Commonwealth v. Sabetti, 411 Mass. 770, 778 (1992) (evidence that defendant was in driver's seat of vehicle containing drugs and "virtual wasteland of plainly visible contraband" and had attempted to flee was sufficient to permit inference of knowledge of contraband).

Commonwealth v. Santana, 420 Mass. 205, 215 (1995) (evidence that defendant owned vehicle that he was driving, ignition in vehicle was "popped," cocaine was in clear bag under passenger's seat, scale was in back seat, and defendant failed to stop on police request and, when removed from vehicle, repeatedly looked over his shoulder at vehicle was sufficient to permit inference of knowledge of cocaine).

Commonwealth v. Daley, 423 Mass. 747, 752 (1996) (evidence that defendant was operator and sole occupant of unregistered vehicle and cocaine visible on floor in front of driver's seat in an area to which defendant had easy access and control was sufficient to permit inference of knowledge of cocaine).

Commonwealth v. Romero, 464 Mass. 648, 653-654 (2013) (evidence that defendant, who owned vehicle, was sitting in driver's seat when front seat passenger openly handled gun was sufficient to permit inference of knowledge of gun).

Commonwealth v. Sanchez, 40 Mass. App. Ct. 411, 415-418 (1996) (evidence that defendant exercised control over vehicle, possessed beeper, and his birth certificate and personal papers were found in trunk near suitcase containing his clothes and cocaine was sufficient to permit inference of knowledge of cocaine).

Commonwealth v. Sadberry, 44 Mass. App. Ct. 934, 936 (1998) (evidence that defendant or companion fired shots, they fled scene in vehicle driven by defendant, gun was under driver's seat, and gun exuded smell of burnt gunpowder was sufficient to permit inference of knowledge of gun).

Commonwealth v. Valentin, 55 Mass. App. Ct. 667, 671 (2002) (evidence that gun was in open view in backpack with defendant's paystub and shirt in vehicle he was driving and he refused to stop for police was sufficient to permit inference of knowledge of gun).

Commonwealth v. Blevins, 56 Mass. App. Ct. 206, 211 (2002) (evidence that defendant and companion both used guns in assault and then left scene in vehicle driven by third individual, defendant sat in front passenger seat and companion sat in back passenger seat, defendant fled when police stopped vehicle, and gun was found on floor in front of back seat where companion had been sitting was sufficient to permit inference of knowledge of gun).

Commonwealth v. Horton, 63 Mass. App. Ct. 571, 578 (2005) (evidence that police saw defendant, who was sitting behind driver's seat, reach down and kick something below driver's seat, and gun was protruding from under driver's seat onto floor in front of defendant was sufficient to permit inference of knowledge of gun).

Commonwealth v. Bienvenu, 63 Mass. App. Ct. 632, 638-639 (2005) (evidence that defendant, who was not driver, owned vehicle and was with her personal effects in back seat close to scale and box of baggies was sufficient to permit inference of knowledge of cocaine found between driver's seat and gear shift).

Commonwealth v. Cotto, 69 Mass. App. Ct. 589, 593 (2007) (evidence that trooper detected smell of marijuana and marijuana blunt was found in plain view on floor near defendant's feet was sufficient to permit inference of knowledge of blunt; evidence that defendant stared at trooper in odd and alarming manner and shoved his feet under seat where gun was found was sufficient to permit inference of knowledge of gun).

Commonwealth v. Elysee, 77 Mass. App. Ct. 833, 846-848 (2010) (as to first defendant, evidence that gun at his feet was in his plain view in area over which he had immediate control and he was nonresponsive and deceptive with police was sufficient to permit inference of knowledge of gun; as to second defendant, evidence that gun was hidden under his seat upon arrival of police and he attempted to exit vehicle when he was ordered not to do so was sufficient to permit inference of knowledge of gun).

Commonwealth v. Obiora, 83 Mass. App. Ct. 55, 60 (2013) (evidence that gun wedged between seat in which defendant was sitting and center console was in plain view and easily accessible to defendant, ammunition was found under defendant's seat where he had been "shuffling," and defendant had vehicle, which belonged to his girl friend, for prior twenty-four hours was sufficient to permit inference of knowledge of gun and ammunition).

Commonwealth v. Crapps, 84 Mass. App. Ct. 442, 444-445 (2013) (evidence that defendant was driver and sole occupant of vehicle, lived with registered owner of vehicle, had permission to use vehicle, had been engaged in suspected drug dealing behavior, and possessed $585; that his personal papers were on passenger seat; and that driver's side door pocket contained cell phone was sufficient to permit inference of knowledge of drugs).